**CARIBBEAN PRODUCE EXCHANGE, INC., Plaintiff, Appellee,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, et al., Defendants, Appellants.**

No. 89–1257.

United States Court of Appeals, First Circuit.

Heard Nov. 1, 1989.
Decided Dec. 28, 1989.

Barbara C. Biddle, Atty., Appellate Staff, Civ.Div., Dept. of Justice, with whom Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., Michael Jay Singer, Atty., Appellate Staff, Civ.Div., Dept. of Justice, Thomas Scarlett, Chief Counsel, Food & Drug Admin., and Sandra Barnes, Associate Chief Counsel for Enforcement, Food & Drug Admin., Washington, D.C., were on brief for defendants, appellants.

Daniel R. Dominguez, with whom Carmen Irizarry de Dominguez and Dominguez & Totti, Hato Rey, P.R., were on brief for plaintiff, appellee.

Before CAMPBELL, Chief Judge, and TORRUELLA, Circuit Judge, and COFFIN, Senior Circuit Judge.

COFFIN, Senior Circuit Judge.

The Secretary of Health and Human Services (Secretary) challenges a permanent injunction barring the Food and Drug Administration (FDA) from preventing the importation of garlic until its procedures for detecting impermissible spoilage have met the notice and comment requirements of the Administrative Procedure Act. 5 U.S.C. § 553.

This case arose out of the following circumstances. On August 7, 1988 a shipment of 6,912 crates of fresh, raw, purple, Spanish garlic consigned to Caribbean Produce Exchange, Inc. (Caribbean), arrived in San Juan, Puerto Rico, from Alicante, Spain.

On August 15, samples were taken by the FDA in the following manner according to its usual procedure. Twenty crates of garlic were taken (5 crates from each of 4 pallets); a one-pound sample was taken from each of the 20 crates; 5 whole bulbs were then taken from the one-pound samples; from the 100 resulting bulbs, 30 were examined. In accordance with a procedure described in a "Macroanalytical Procedures Manual," each clove within a bulb was examined after peeling and cutting, the bulb being rejected if any clove was found to have a relevant defect. Although the manual contemplates that 50 bulbs will be inspected, the result of this particular sampling was that 16 bulbs out of the first 30 checked were rejected. Under FDA procedures, a shipment will be detained if the number of defective bulbs exceeds 10 percent (the "10 percent rule of thumb"). Since that percentage already was exceeded, the condition of the other 20 bulbs in the sample of 50 was irrelevant, and the shipment was ordered to be detained based on the results for the first 30. On August 25, after an administrative hearing and appeal to the FDA district director, the FDA issued its final decision refusing admission of the garlic.

On September 1, Caribbean brought suit for injunctive relief alleging three causes of action: (1) that the FDA lacked jurisdiction over fresh vegetables under 21 U.S.C. § 341, which provides that "no definition and standard of identity and no standard of quality shall be established for ... fresh or dried vegetables"; (2) that the FDA, even if it might have jurisdiction over fresh vegetables such as garlic, had failed to promulgate lawful standards of identity and quality, and (3) that the FDA's findings were arbitrary and capricious in light of more favorable results from inspections carried out by the Department of Agriculture and Customs Service.

On September 21, the parties received a limited hearing in the district court. Although witnesses assertedly were present, no live testimony was taken. The parties stipulated to certain documentary evidence. Plaintiff's counsel, after informing the court that documents had been marked and the parties had agreed to "argue the legal issue before this Honorable court," concluded by saying "[s]hould we prevail, then a hearing would be in order as to the irreparable damages issue." On October 7, the district court issued an opinion dismissing the complaint.

Subsequently, on October 27, Caribbean moved for reconsideration, raising for the first time the argument that the FDA's 10 percent rule of thumb and manual-prescribed procedure for sampling garlic required notice-and-comment rulemaking pursuant to the Administrative Procedure Act, 5 U.S.C. § 553. The motion was addressed to the authority of the court to "issue a preliminary injunction reversing FDA's detention of the garlic of plaintiff." The FDA argued in response that both the rule of thumb and the sampling procedure were exempt from the APA rulemaking requirements because they did not have the force of law and simply provided procedural

guidelines to aid FDA analysts in making detention determinations.

On December 30, the district court did indeed reverse its decision. Not only did the order release the immediate shipment,[1] but it also *permanently* enjoined the FDA from barring the importation of garlic without complying with the notice and comment requirements of the APA.[2] The order, however, was stayed pending resolution of this appeal.

Unlike many cases we review, which seem to have taken an unconscionable time to reach the appellate level, this case suffers from the opposite defect, too fast a track. The court was obviously pursuing the generally admirable objective of saving time and duplication of effort by consolidating the proceedings seeking preliminary injunctive relief with those seeking permanent relief. Fed.R.Civ.P. 65(a)(2) recognizes such a manner of proceeding by permitting the court to "order the trial of the action on the merits to be advanced and consolidated with the hearing of the application [for preliminary injunction]." Courts, however, have recognized the all-too-real hazards inherent in fully disposing of cases in such an expedited fashion—among them incomplete coverage of relevant issues and failure to present all relevant evidence. The law therefore has developed the overriding requirement that indisputably clear notice be given to the parties that such consolidation is contemplated.

As long ago as 1971, in *T.M.T. Trailer Ferry, Inc. v. Union de Tronquistas de Puerto Rico, Local 901*, 453 F.2d 1171 (1st Cir.1971), we reversed a judgment in which the district court had dismissed a complaint after a hearing on plaintiff's request for a preliminary injunction. We did so because the plaintiff had not been put "on notice that the scope of the scheduled hearing

1. The shipment detained was subsequently released and issues relating to that particular shipment are not part of this appeal.

2. The district court also required the FDA to promulgate a standard of identity for garlic. The court, however, previously had recognized that 21 U.S.C. § 341, which deals with standards

of identity—standardized recipes for multi-ingredient manufactured foods—is inapplicable to this case. It appears that, in reversing its earlier decision against Caribbean, the court mistakenly incorporated the language in Caribbean's original request for an injunction. This part of the injunction must be and hereby is reversed.

would include a decision on the merits of the complaint," *id.* at 1172. Shortly thereafter, we issued a similar ruling in *Santiago v. Corporacion de Renovacion Urbana,* 453 F.2d 794, 797–98 (1st Cir.1972).

Subsequently, the Supreme Court in *University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), noted the general inappropriateness of a court's issuance of a final judgment at the preliminary injunction stage, citing, *inter alia, Santiago.* The Court quoted then Circuit Judge Stevens, " '[T]he parties should normally receive clear and unambiguous notice [of the court's intent to consolidate the trial and the hearing] either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases.' *Pughsley v. 3750 Lake Shore Drive Cooperative Bldg.,* 463 F.2d 1055, 1057 (CA7 1972).…" *Id.* 451 U.S. at 395, 101 S.Ct. at 1834.

In the instant case there was no notice of consolidation and no affidavits or documentary evidence addressed to the notice and comment issue on which the permanent injunction was principally based. Not only was the September 21 hearing conducted subject to the understanding that irreparable injury would be taken up at a later date—an issue relevant only to a temporary injunction—but both parties operated on the assumption that only the preliminary injunction was at stake. The Secretary's memo in opposition to plaintiff's request for a preliminary injunction discussed the cases in standard fashion in accordance with the four criteria ordinarily applicable to requests for preliminary injunction, citing *LeBeau v. Spirito,* 703 F.2d 639 (1st Cir.1983). Plaintiff's request for reconsideration, which triggered the reversal, also concluded by stating that the errors pointed out in its memorandum gave the court "authority to issue a preliminary injunction reversing FDA's detention of the garlic.…"

Appellee seeks to avoid the principle of due notice by quoting from 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2950, at 490 (1973), wherein the authors point to some cases that "permit either the trial or the appellate court to decide a case on the merits whenever the evidence on the preliminary injunction motion does not reveal any conflict of material fact that justifies a full trial on the merits." Unfortunately, appellee chose not to cite the passage immediately following this language:

The approach of these cases must be questioned, however, on the ground that in effect the court is rendering summary judgment without giving the advance notice or the hearing that Rule 56 requires. This seems inappropriate because the issues of irreparable harm and reasonable probability of success on the merits, which are focused on during a preliminary injunction hearing, are distinguishable from the question whether there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law, which is the critical inquiry on a summary judgment motion. Moreover, because the parties are concerned about the issuance of a preliminary injunction, the facts adduced at a Rule 65(a) hearing often will not be sufficient to permit an informed determination of whether a direction for the entry of judgment is appropriate. Consequently, the absence of a showing that material factual issues exist during an unconsolidated hearing on a preliminary injunction motion does not justify what in effect is a sua sponte summary judgment unless the adverse party has been given notice and an opportunity to oppose the entry of judgment.

*Id.* at 492 (footnotes omitted).

Whether or not we would ever recognize an exception to the clearly enunciated general rule requiring notice, we would not do so in the circumstances of this case. Our general feeling is that as these proceedings developed, they took on the contours of a meandering stream, revealing new issues at each curve and at the same time leaving old issues behind. The hearing focused on whether 21 U.S.C. § 341, which prohibits the establishment of a definition and standards of identity and quality for fresh vegetables, precludes the FDA from enforcing the adulteration provisions of section 342

with respect to fresh vegetables. The district court answered this question by noting that § 341 applied only to multi-ingredient foods and had no relation to § 342, which regulates adulteration of all "food." Only after reconsideration did the focus shift to absence of notice and comment concerning the 10 percent rule of thumb and the manual's enunciated procedure for sampling. At this juncture, the district court understood the FDA's position to be that the rule and manual were exempted from the APA rulemaking requirements because they concerned only agency practice and procedure.[3] *See* slip opinion at 3.

The focus seems to have shifted again on appeal, for the Secretary now argues that the 10 percent criterion is exempt as either an interpretive rule or statement of policy, and that the manual qualifies within any of the exemption categories. As if there were not enough moving targets, we are also informed that the 10 percent rule of thumb detention criterion appears to be unpublished. The Secretary acknowledges that a statement of policy or interpretive rule, even if exempt from notice and comment procedures, must be published in the Federal Register or made available to the public under 5 U.S.C. § 552.

This congeries of circumstances demonstrates that the decision on the merits in this case was premature. A number of significant questions remain unaddressed, or inadequately developed, and should be considered by the district court on remand, either through an evidentiary hearing or, if appropriate, through summary judgment procedure. To assist the district court, we shall note below several questions that have occurred to us in our review of this case. We do not mean to imply, however, that these suggested questions cover all of the relevant issues or that they are all necessarily relevant, but only to indicate that there remains a considerable task of sorting out both questions of law and questions of fact.

(1) The primary question is whether the 10 percent rule of thumb and the manual procedure should be considered "legislative rules," i.e., binding norms intended to have the force of law, restraining the discretion of officials and therefore subject to the notice-and-comment procedures.

(2) What has been the experience in this particular agency in administering these two items of guidance?

(3) What is the effect of 21 C.F.R. § 10.40? That provision concerns the promulgation of regulations and the rulemaking process, and states that the process shall apply to interpretive rules and rules of agency practice and procedure. In particular, if the 10 percent rule and the manual are, in fact, interpretive rules or rules of agency practice that would be eligible for exemption from the rulemaking procedure, does 21 C.F.R. § 10.40 limit the FDA's ability to invoke an exemption?

(4) If, rather than interpretive rules or rules of agency practice and procedure, the 10 percent rule and manual are statements of policy, are these statements of policy the kind exempted from notice or comment requirements by 21 C.F.R. § 10.40(d) ("general statements of policy in the form of informational notices published in the Federal Register")?

(5) Even if there is no exemption under § 10.40(d), can the FDA take advantage of the "good cause" provision of § 10.40(e)(1)?

(6) What is the effect of the failure to publish the 10 percent rule of thumb in apparent violation of 5 U.S.C. § 552? As our court has held, in an opinion authored by the distinguished judge presently being reviewed, "the failure to publish in the Federal Register does not automatically invalidate an administrative regulation or guideline," *Welch v. United States*, 750 F.2d 1101, 1111 (1st Cir.1985) (citing *Donovan v. Wollaston Alloys, Inc.*, 695 F.2d 1, 9 (1st Cir.1982); *Pitts v. United States*, 599 F.2d 1103, 1107–08 (1st Cir.1979)). The importance of publication turns on whether a party can be said to be adversely affected

---

**3.** Under 5 U.S.C. § 553(b)(A) an agency need not engage in notice-and-comment procedures when it issues "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice."

by any unpublished or otherwise publicly unavailable guidelines, *see id.*, raising questions in this case concerning the adverse impact of non-publication on plaintiff Caribbean.

We add two further comments. In assessing whether an agency's rule is one that implicates notice and comment procedure, we note that the district court had fully in mind our opinion, authored by the late Judge McGowan, *Levesque v. Block*, 723 F.2d 175, 182 (1st Cir.1983), in which we stated "[w]e agree that substantial impact does not make a rule legislative, but whether a rule has a substantial impact may be relevant in construing the intent of the agency in issuing the rule." We emphasize that "substantial impact" is a factor, but not the only one. The court also must consider the agency's intent and the literal words of the governing statute. In addition, a discriminating analysis of impact should take into account the availability of administrative review of decisions to detain goods and the range of options remaining in the discretion of the agency.

Finally, in reviewing the sampling procedure used by the FDA as described by its manual, the court should recognize that the purpose of the sampling procedure is to arrive at a reasonably accurate estimate of the number of defective bulbs in a large shipment by extrapolating the results obtained from a representative sample. If the sample can be deemed to be representative, then the percentage of defective bulbs emerging from a study of the sample can be projected to the shipment at large.

*The judgment is set aside and the case is remanded to the district court for further proceedings consistent with this opinion.*