**VAQUERIA TRES MONJITAS, INC., and Suiza Dairy, Inc., Plaintiffs,**

**v.**

**Jose O. Fabre LABOY, in his official capacity as Secretary of Agriculture of the Commonwealth of Puerto Rico, and Juan R. Pedro–Gordian, in his official capacity as Administrator of the Milk Industry Regulatory Office of the Commonwealth of Puerto Rico, Defendants.**

**Civil No. 04–1840 (DRD).**

United States District Court, D. Puerto Rico.

Sept. 1, 2006.

Maxine M. Brown–Vazquez, Enrique Nassar–Rizek, Enrique Nassar Rizek & Associates, San Juan, PR, Jose R. Lazaro–Paoli, Rafael Escalera–Rodriguez, Thomas Trebilcock–Horan, Michelle Camacho–Nieves, Reichard & Escalera, San Juan, PR, for Plaintiffs.

Edward W. Hill–Tollinche, San Juan, PR, Humberto Guzman–Rodriguez, Guaynabo, PR, Kermit Ortiz–Morales, Ortiz & Ortiz Law Office, PSC, Michael C. McCall, Michael Craig McCall Law Office, Yassmin Gonzalez–Velez, Quinones, Sanchez & Guzman, PSC, Kristine Burgos–Santiago, Department of Justice Office of the Solicitor General, Kenneth Colon–Alicea, San Juan, PR, for Defendants.

Maria D. Bertolez–Elvira, Jorge I. Peirats, Nestor Mendez–Gomez, Pietrantoni Mendez & Alvarez, Salvador J. Antonetti–Stutts, Department of Justice Federal Litigation Division, Orlando H. Martinez–Echeverria, Orlando H. Martinez Law Office, San Juan, PR, for Intervenor Defendant.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court is a *Motion Requesting Consolidation Of Preliminary Injunction Hearing With Permanent Remedy Under The Provisions Of FRCP 65(a)(2)* filed by co-plaintiff, Suiza Dairy, Inc. ("Suiza Dairy") (Docket No. 329); the oppositions thereto (Docket entries No. 332, 337, 338, 339); Suiza Dairy' reply to the oppositions (Docket No. 342), and the sur-reply filed by Industria Lechera de Puerto Rico ("Indulac") (Docket No. 346). For the reasons set forth below, Suiza Dairy's request for consolidation of the preliminary injunction hearing with permanent remedy is **DENIED**.

### *Factual and Procedural Background*

On August 20, 2004, plaintiffs, Vaquería Tres Monjitas, Inc. ("Tres Monjitas") and Suiza Dairy, Inc. filed a request for preliminary injunctive relief under Rule 65(a) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Plaintiffs challenge the constitutionality of the laws and regulations that govern the milk industry in Puerto Rico, particularly, the Milk Industry Regulation Act, Act No. 34 of June 11, 1957, 5 L.P.R.A. §§ 1092–1125 ("Act 34"), as amended, and Regulation No. 1 of June 11, 1957 ("Milk Regulation No. 1"), as amended.

Plaintiffs allege that the current legislation imposes an undue monetary burden on the industrial processors of fresh milk.[1] Plaintiffs also allege that this undue burden is discriminatory, and benefits exclusively the Industria Lechera de Puerto Rico ("Indulac"), which is partially owned by the Commonwealth of Puerto Rico (the "Government").[2]

---

1. Plaintiffs allege that they pay approximately $46,700,000 for one fifth (1/5) of the total production of raw milk, while Indulac pays approximately $7,100,000 for the same amount of raw milk. *See* Docket No. 206, p. 16.

2. Plaintiffs also allege that, originally, Indulac's milk purchase price was subsidized by the private milk processors, provided that Indulac would use the raw milk to manufacture non-fluid milk by-products, that is, Indulac's product would not compete within the fluid milk market. However, the reality is other,

This case was reassigned to the undersigned on February 23, 2005 (Docket No. 79). The record shows, that as of August 4, 2006, the Court has held fifty-one (51) evidentiary hearings. The undersigned has held forty-nine (49) of the fifty-one (51) hearings, including eight (8) scheduled during evening hours.[3] The record also shows that the Court has held six (6) conferences in the instant case.[4]

On September 14, 2005, plaintiffs filed a Second Amended Complaint against the defendants, the Hon. José O. Fabré Laboy, in his official capacity as Secretary of Agriculture of the Commonwealth of Puerto Rico, and Mr. Juan R. Pedro–Gordian, in his official capacity as the Administrator of the Puerto Rico Milk Industry Regulatory Office (the "Administrator") (Docket No. 206). The six (6) causes of action[5] are succinctly summarized as follows:

First Cause of Action: Plaintiffs challenge the constitutionality of Milk Regulation No. 1, as the margin of thirty cents ($0.30) provided to the industrial milk processors is insufficient to cover their costs, and "much less receive a reasonable return on their investment." See Docket No. 206 at p.p. 27 and 29. Plaintiffs move the Court for a ruling to declare Milk Regulation No. 1 "an unconstitutional confiscation of plaintiffs' property." Id.

Second Cause of Action: Plaintiffs allege that the orders and decisions made under Milk Regulation No. 1, confiscates plaintiffs' property without due process of law, as they are contrary to the legislative intent of Act No. 34, and they force plaintiffs to "subsidize the entire milk industry, particularly, their most important competitor in the fluid milk market." See Docket No. 206 at p. 29. Plaintiffs also allege that Milk Regulation No. 1 imposes a higher purchase price on Tres Monjitas and Suiza Dairy of $0.66125 per quart for fresh milk, as opposed to the guaranteed minimum price for surplus milk fixed on Indulac $0.10 per quart (sounding in violation of due process and equal protection, provided by the Fourteenth Amendment of the United States Constitution). See Docket No. 206 at p. 31. Moreover, plaintiffs argue that the already fixed prices will not be amended under the proposed Milk Regulation No. 10. See Docket No. 206 at p. 32.

Third Cause of Action: Plaintiffs challenge the Administrator's interpretation of Milk Regulation No. 1, and Act No. 34, as it "violates the guarantee of equal protection of the laws" provided by the Fourteenth Amendment of the U.S. Constitution, as it discriminates between private fresh milk processors and Indulac, as they vigorously compete within the fluid milk market. See Docket No. 206 at p.p. 32–33.

Fourth Cause of Action: Plaintiffs allege that the orders issued by the Administrator only favors "in-state commercial interests (Indulac), over out-of-state interests (potential and actual competitors in the market for UHT milk), due to the artifi-

according to plaintiffs. Indulac now produces about ninety-five percent (95%) of the Ultra High Temperature ("UHT") milk in Puerto Rico, a fluid milk product that directly competes against fresh milk. See Docket No. 206, p. 16.

3. Hon. Aida M. Delgado Colón, then U.S. Magistrate Judge Delgado, held two hearings on February 15 and 16, 2005 (Docket entries No. 71, 72).

4. Hon. Gustavo A. Gelpí, then U.S. Magistrate Judge Gelpí, held a conference on February 25, 2005 (Docket No. 82). The Minutes of February 25, 2005 reflect that the undersigned was also present at the conference.

5. The causes of action are colorable, potentially viable, and not frivolous in nature.

cially low subsidized prices" fixed to Indulac. *See* Docket No. 206 at p. 34. Plaintiffs argue that the Administrator's orders constitute a barrier against interstate trade in UHT milk and violate the "dormant" Commerce Clause of the U.S. Constitution, which is applicable to the Commonwealth of Puerto Rico. *See* Docket No. 206 at p. 35. Plaintiffs allege that the violation to the "dormant" Commerce Clause affects their interests. *Id.*

Fifth Cause of Action: Plaintiffs allege that the defendants have failed to prevent monopoly and unfair competition practices, and discrimination in several phases of the milk industry, from production up to the sale of milk, and its by-product to the consumer. *See* Docket No. 206 at p. 36. In sum, the defendants have failed to properly regulate Indulac by favoring it with certain advantages, to wit: (a) exclusive subsidize access to raw material; (b) exclusive producer of UHT milk in Puerto Rico; and (c) subsidized transportation services for acquiring the raw milk at plaintiffs' expense. *See* Docket No. 206 at p. 36. Moreover, the Administrator have failed to grant plaintiffs the requested licenses to produce UHT milk, notwithstanding that plaintiffs meet the requirements for said license. Suiza Dairy argues that the Administrator has violated its due process, as the Administrator has failed to give notice to Suiza Dairy of any type, nor has the Administrator provided the opportunity to Suiza Dairy to show that it meets the requirements to obtain the license. *See* Docket No. 206 at p. 37.

Sixth Cause of Action: Plaintiffs seek a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, finding that the decisions, acts and orders issued by the Administrator under Milk Regulation No. 1 are unconstitutional, on the following grounds: (a) confiscation of property, as the Administrator does not allow Plaintiffs to make a reasonable profit in their milk business, and recover real transportation costs; (b) by guaranteeing Indulac "an artificially low subsidized" price for the milk used by Indulac to produce the UHT milk, and allowing Indulac to enter into an open competition in the milk market, which is discriminatory and unreasonable, as it violates plaintiffs' due process of law rights; (c) deprivation of equal protection of laws by advancing information to a competitor; (d) violation to the "dormant" Commerce Clause for failure to provide economic protection to plaintiffs; and (e) failure to comply with the legislative intent of Act No. 34.

*Suiza Dairy's request for consolidation*

On June 29, 2006, Suiza Dairy moved the Court to consolidate the preliminary hearing with the request for a permanent injunction and declaratory judgment, after forty-nine (49) days of lengthy evidentiary hearings. The timing is fatally late and dooms the result.[6] The Court notes that co-plaintiff Tres Monjitas is silent as to Suiza Dairy's request (Docket No. 329).

Suiza Dairy's consolidation request comes at this late stage of the proceedings, notwithstanding that this issue was addressed by the Court at the commencement of the preliminary injunction hearings. The record shows that, on April 15, 2005, Indulac moved the Court to consolidate the preliminary and permanent injunction hearings to expedite the procedures, provided that a term of sixty (60) to ninety (90) days be granted to conduct

**6.** The Court simply is of the ultimate conclusion that the request is untimely under *New England Anti–Vivisection Society, Inc. v. United States Surgical Corporation, Inc.*, 889 F.2d 1198 (1st Cir.1989). A consolidation of the case would constitute by the Court an inequitable solution within an equitable remedy (see discussion *infra* ).

discovery. Plaintiffs opposed Indulac's request. After hearing counsel arguments, the Court declined to consolidate the preliminary and permanent injunction hearing (Docket No. 134).

Suiza Dairy's request is now based on the following procedural grounds: (a) pursuant to Fed.R.Civ.P. 65(a)(2), the Court may consolidate both proceedings; (b) no damages have been requested by plaintiffs; (c) all parties have actively participated in the presentation of evidence, and they have exchanged considerable documentary information, which has been marked and/or admitted into evidence; (d) the government has presented their evidence and has rested; (e) Indulac and the Puerto Rico Dairy Farmers Association ("PRDFA") have informed the Court that they will present expert witnesses; (f) the essential facts for a determination on the constitutionality of the milk regulation are not in dispute;[7] and, (g) the only legal issue pending before the Court is whether or not the current milk regulation is constitutional. *See* Docket No. 329.

### Oppositions to Suiza Dairy's request for consolidation

The following parties have opposed Suiza Dairy's request for consolidation. On July 13, 2006, Indulac filed an *Opposition To Motion For Consolidation Of Preliminary Injunction And Permanent Injunctions* (Docket No. 332). Indulac argues that the "scope and procedural posture of

a hearing for preliminary injunction is significantly different from a trial on the merits," thus, the Court should allow the parties fair notice and an opportunity to be heard in further compliance with due process. Indulac further alleges that "if notification of consolidation occurs after the parties have presented their evidence in the preliminary injunction hearing, it is constitutionally insufficient and consolidation is unwarranted" (Docket No. 332).

On July 17, 2006, the PRDFA filed its *Opposition To Motion For Consolidation Of Preliminary And Permanent Injunction; And Motion Joining Indulac's Opposition* (Docket No. 337), on the grounds that Suiza Dairy's request: (a) is untimely, contradictory and filed in bad faith, as the same was filed to take advantage of the government's defendants and intervenors who prepared for a preliminary injunction hearing and not the trial on the merits; and, (b) to consolidate the hearings at this stage of the proceedings will represent a "titanic effort" by the Court to separate the evidence presented and admitted on the preliminary injunction from the evidence admissible for the trial on the merits. PRDFA also argues that the standard for consolidation of the preliminary and permanent injunctions requires that "clear and unambiguous notice in a timely manner" be provided to all parties to allow them a full opportunity to present their case. PRDFA, together with other defen-

---

7.  Suiza Dairy alleges that the following facts are undisputed:

(I) "the lack of regulatory standards for the determination of costs and margin in the milk industry;

(ii) Indulac does not have a regulated margin;

(iii) Indulac competes in the fluid market of Puerto Rico with UTH milk;

(iv) Indulac's UTH milk is purchased, because of the regulatory environment, at a cost much lower that production cost;

(v) Fresh milk plants are required to pay for that same raw milk an amount much higher that what is necessary to cover production costs and farmer's profit; and,

(vi) Indulac will not be able to compete with UTH imports if it were forced by regulation to pay an amount equal to the cost of production plus a reasonable profit for its raw milk." *See* Docket No. 329, p.p. 4 and 5.

dants, originally moved for the consolidation of the injunctive relief hearings at the inception of the preliminary injunction hearing. However, Suiza Dairy vehemently opposed the request at that stage of the proceedings. PRDFA argues that consolidation would have been appropriate at the early stage of the proceedings. PRDFA now joins Indulac's opposition to the consolidation request, as being untimely and for lack of proper notice.

On July 17, 2006, the Administrator filed an *Opposition To Motion Requesting Consolidation Of Preliminary Injunction With Permanent Remedy* (Docket No. 338), on the grounds that: (a) pursuant to the record, the Court has been conducting a preliminary injunction hearing over a lengthy period of time (over forty (40) Court sessions) to hear evidence for the preliminary injunctive relief only; (b) the Administrator has not requested any documents from any of the parties during the course of the preliminary hearing; (c) the Administrator waived three (3) of the announced witnesses based upon the representation made that this was a preliminary hearing, and the presentation of all the witnesses would be cumulative evidence; (d) the Administrator presented only two (2) witnesses at this stage of the proceedings premised on the preliminary nature of the injunctive relief requested, and looking forward to the next stage of the proceedings, that is, the discovery and permanent injunction hearing; and, (e) based on the premises that this was a preliminary hearing, the Administrator did not engage an expert witness at this stage of the proceedings, nor gathered the documentary evidence, and the testimonial information from all the parties. *See* Docket No. 338. The Administrator also argues that the Court has always addressed this matter as a preliminary injunction hearing, and that if the Court were to grant the consolidation of the preliminary injunctive relief

with the permanent remedy, the same would be highly prejudicial to the Administrator.

On July 18, 2006, the Hon. José O. Fabré Laboy, in his official capacity as Secretary of Agriculture of the Commonwealth of Puerto Rico, filed a *Motion Opposing Suiza's Motion Requesting Consolidation Of Preliminary Injunction Hearing With Permanent Remedy Under The Provisions Of FRCP 65(a)(2) (Docket No. 329) and Joining The Other Oppositions To The Same* (Docket No. 339), on the grounds that: (a) the parties prepared the litigation strategy of their cases, including the presentation of evidence and arguments, based on the premise that the matter before the Court was a preliminary injunction hearing, as opposed to a permanent injunction hearing; (b) a ruling on a request for a preliminary injunctive relief differs from the factors to be taken into consideration by the Court when issuing a permanent injunctive relief, thus, they are procedurally different; (c) plaintiffs have opposed the consolidation of the preliminary and permanent injunction hearings throughout the proceedings, thus, to allow Suiza Dairy's request for consolidation at this stage of the proceedings will be unfair; (d) the Secretary was not allowed to take any depositions prior to the commencement of the preliminary injunction hearing; (e) other parties, such as the intervenors, Indulac and PRDFA, were not allowed to make any discovery due to the preliminary nature of the injunctive relief requested, nor have the parties properly assessed the evidence presented or the factual basis to evaluate the opinions of the expert witnesses presented; and, (f) Suiza Dairy has not met its burden by failing to show that consolidation is warranted at this late stage of the proceedings. The Secretary also argues that if the proceedings are consolidated, it "would

allow plaintiffs to profit from their [Suiza Dairy] delaying tactics in the proceedings and greatly prejudice defendants and intervenors who reasonably assumed that the hearing[s] were [sic] limited to preliminary injunctive relief in light of the Court's prior rulings and the conduct of those hearings" (Docket No. 339).

### Suiza Dairy's Reply and Indulac's Sur–Reply

On July 21, 2006, Suiza Dairy filed a *Reply To Defendants' Opposition To Consolidation Of Preliminary Injunction Hearing With Permanent Remedy* (Docket No. 342), addressing all the arguments of the parties opposing the consolidation of the hearings on injunctive relief. Suiza averred that the defendants and the intervenors enjoyed ample time to conduct the necessary discovery, as this matter has been consistently before the Court for over a year.[8] Thus, a consolidation is warranted, at this stage of the proceedings (Docket No. 342).

On July 31, 2006, Indulac filed a *Sur–Reply To Reply To Opposition To Motion For Consolidation Of Preliminary And Permanent Injunctions* (Docket No. 346). Based upon the Court's discretion, grounded on the "public interest" that the case requires under injunctive relief (*see* discussion *infra*), Indulac's *Sur–Reply* will be considered by the Court, notwithstanding that the document was filed untimely, pursuant to the provisions of Local Rule 7.1 of the Local Rules of the United States District Court for the District of Puerto Rico ("Local Rules"). Indulac argues that consolidation is inappropriate at this time, as the record shows that the "clear and unambiguous notice" requirement has not been met. Indulac also alleges that "consolidation has not been signaled nor ordered," and the Court has reminded the

parties, at all times, that this is a preliminary injunction hearing, as opposed to a hearing for a permanent injunctive remedy.

### Applicable Law and Discussion

■ The issue before the Court is twofold: (a) whether consolidation of injunctive applications is procedurally permissible under Fed.R.Civ.P. 65; and, (b) whether consolidation of the injunctive applications is appropriate at this late stage and further considering the fact that this is a matter of extreme public interest.

Fed.R.Civ.P. 65(a) governs the preliminary injunction procedural requirements. Rule 65(a)(2) provides for the consolidation of the preliminary injunction hearing with the trial on the merits.

> Before or after the commencement of the hearing of an application for a preliminary injunction, the Court **may** order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision (a)(2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury. (Emphasis supplied.)

### A. *Procedural standard to consolidate injunction applications.*

Unless the complaint requesting injunctive relief is procedurally defective, or the Court finds grounds for dismissal, the Court may consider the consolidation of the preliminary and permanent injunctive

---

**8.** The Court merely clarifies that the matter has been "consistently before the Court" but as a preliminary injunction not consolidated with the trial on the merits.

applications, if several factors are met. Fed.R.Civ.P. 65(a)(2) provides that, based on its discretionary power, the Court "tempered by the due process principle" may allow the consolidation, provided that fair notice is given to all litigants, as well as, an opportunity to be heard. 11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2950 (2006). *See also, American Train Dispatchers Department of the International Brotherhood of Locomotive Engineers v. Fort Smith Railroad Company,* 121 F.3d 267, 270 (7th Cir.1997) (whether or not to consolidate the preliminary hearing with trial is within the Court's discretion); *T.M.T. Trailer Ferry, Inc. v. Union De Tronquistas De Puerto Rico, Local 901,* 453 F.2d 1171, 1172 (1st Cir.1971).

■ Fair notice has to be "clear and unambiguous" to allow the parties a full opportunity to prepare and present their cases. *Caribbean Produce Exchange, Inc. v. Secretary of Health and Human Services,* 893 F.2d 3, 5–6 (1st Cir.1989), citing *University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), quoting *Santiago v. Corporación de Renovación Urbana,* 453 F.2d 794, 797–98 (1st Cir.1972). *See also* 11A Fed. Prac. & Proc. Civ.2d § 2950. "Because different standards of proof may apply in the hearing than in the trial, parties must be given a clear chance to object or to propose special procedures for the consolidation." *American Train Dispatchers,* 121 F.3d at 270.

■ When considering the possibility of consolidation, the Court may hear arguments from counsel, and may allow counsel ten (10) days to prepare "a showing upon which the final outcome of the case may depend." 11A Fed. Prac. & Proc. Civ.2d § 2950. Consolidation of a preliminary action with trial on the merits "may be taken by stipulation, motion, or even *sua sponte* so long as the procedures do not result in prejudice to either party." *Glacier Park Foundation v. Watt,* 663 F.2d 882, 886 (9th Cir.1981) (citation omitted).

Consolidation is improper if the parties are not given fair notice ("clear and unambiguous notice"), and if the parties are deprived of their right to be heard, and present their cases on the merits. The standard of review of an order granting the consolidation of the preliminary and permanent injunctive applications is the presence of reversible error "when little or no notice is given of this change and the effect is to deprive a party of the right to present his case on the merits." 11A Fed. Prac. & Proc. Civ.2d § 2950. *See also University of Texas,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175; *Santiago v. Corporación de Renovación Urbana,* 453 F.2d 794; *Caribbean Produce Exchange,* 893 F.2d 3.

The party contesting the entry of final judgment must show "prejudice as well as surprise." 11A Fed. Prac. & Proc. Civ.2d § 2950.

Plaintiff is not required to prove its case on the merits at the preliminary hearing, while the defendant is entitled to prepare its case and be heard. 11A Fed. Prac. & Proc. Civ.2d § 2950. In *University of Texas v. Camenisch,* 451 U.S. at 395, 101 S.Ct. 1830, the Supreme Court, citing a first circuit precedent *Santiago v. Corporación de Renovación Urbana,* 453 F.2d at 797–98, held that it is inappropriate to issue a final judgment at the preliminary stage of the injunctive relief, if fair notice was not timely provided to the parties. The Court set forth the standard for notice on consolidation:

> The parties should normally receive **clear and unambiguous notice** [of the Court's intent to consolidate the trial and the hearing] **either before the**

**hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases.** (Citations omitted). (Emphasis supplied).

*See also Caribbean Produce Exchange, Inc. v. Secretary of Health and Human Services,* 893 F.2d at 5-6.

The Court deems inequitable in the case at bar, constituting an equitable injunctive relief,[9] for the Court to originally have denied a consolidation request made by the defendants, opposed by plaintiffs, at the beginning of the hearings; and now, after forty-nine (49) days of hearings, to grant the consolidation request made by plaintiffs. Furthermore, requesting the consolidation extremely late in the proceedings leaves defendants facing a permanent injunctive relief while defending for almost all of the proceedings a preliminary injunctive relief. *Cf.* compare *Caribbean Produce Exchange, Inc. v. Secretary of Health and Human Services,* 893 F.2d at 5-6. The Court further considers that after the hearings are closed or close to the end of the case, a notice to consolidate is clearly untimely creating a potential due process violation. Further, in balancing the equities, as the Court should perform in an injunctive relief, should the Court enter a preliminary injunctive relief, plaintiffs in balance losses little, since the injunctive relief must be obeyed immediately unless the district court grants a stay or the same is modified or reversed on appeal.[10]

**9.** *Morales Feliciano v. Rullán,* 378 F.3d 42, 50 (1st Cir.2004) ("[I]njunctive relief is the classic equitable remedy," citing *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 211 n. 1, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002)); *K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d 907, 914 (1st Cir.1989) ("[A]n injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.' ") (quoting *Cavanaugh v. Looney,* 248 U.S. 453, 456, 39 S.Ct. 142, 63 L.Ed. 354 (1919)).

**10.** Injunctive relief is effective immediately upon issuance by the court unless an appeal is taken, and a stay pending appeal is filed and granted by the district court. Fed. R.Civ.P. 62(c) provides in its relevant part:

"When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.
When considering the factors that govern the issuance of a stay under Fed.R.Civ.P. 62(c), the court will review: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). *See also Martínez Rodríguez v. Jiménez,* 537 F.2d 1, 2 (1st Cir. 1976); *Wal–Mart Stores, Inc., et als. v. Rodríguez,* Civil No. 02–2778(PG), Docket No. 40.

Rule 8(a) of the Federal Rules of Appellate Procedure ("Fed.R.App.P."), provides that the party must move first in the district court for the following relief:
(A) a stay of the judgment or order of a district court pending appeal;
(B) approval of a supersedeas bond; or
(C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.
Fed.R.App.P. 8(a)(2) provides that a motion under Rule 8(a)(1) may also be made to the appeals' court or to one of its judges. This rule also enumerates the factors to be set forth in the motion.

Generally, the standard followed in our circuit is that, "[w]here, . . ., the denial of a stay will utterly destroy the *status quo,* irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay." *Providence Journal Co. v. Federal Bureau of Investigation,* 595 F.2d 889, 890 (1st Cir.1990).

While, on the other hand, a consolidation after the hearings are closed would constitute, for all practical purposes, no notice whatsoever, which is clearly banned by the jurisprudence of this circuit. *Caribbean Produce Exchange, Inc. v. Secretary of Health and Human Services*, 893 F.2d at 5–6. "The parties should normally receive **clear and unambiguous notice** [of the court's intent to consolidate the trial and the hearing] **either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases.**" (Emphasis supplied). *University of Texas*, 451 U.S. at 395, 101 S.Ct. 1830.

### B.  *Public interest.*

The milk industry in Puerto Rico is regulated by the Milk Industry Regulation Act, Act No. 34 of June 11, 1957, 5 L.P.R.A. §§ 1092–1125, as amended ("Act No. 34"). Challenges to the milk quotas and milk regulation, in general, are not new to the Court. The Legislative History of Act No. 34, as well as the multiple legal actions filed by the farmers, and the producers, among others, in an attempt to regulate the milk industry, clearly show that this is a matter of extreme public interest. The Legislative History of Act No. 34 provides:

> By the middle of last year [1956], the Special Committee created by Senate Resolution No. 77 made a survey of milk production, processing and distribution in Puerto Rico. The survey disclosed that the milk industry was in crisis: a chaotic situation affected milk consumers, producers and processors, because of the deficient business relationship prevalent among processors themselves and between processors and producers.

. . . . .

In view of the recommendations of the Senate Special Committee and considering the serious crisis existing in the milk industry, the Milk Industry Regulation Administration Office was created, with broad regulatory powers to solve properly the chaotic situation the milk industry was undergoing.

Through this enactment the Legislature clarifies and ratifies its original intent with respect to milk industry regulation. Thus the Legislature wishes to reiterate its intent that the Commonwealth shall, in the exercise of its police power and so as to promote the general welfare, intervene directly with the milk industry in order to straighten up its bearings by adequate regulation, that public interest be suitably served through an increased production of pure milk and its by-products by a vigorous, healthy and progressive industry operating efficiently and capable of supplying consumers with milk and its by-products at fair and unreasonable prices.

Plaintiffs are challenging the constitutionality of the government's regulation on the milk industry. Consequently, any ruling of this Court on this matter, will have a direct impact on the government, who regulates the milk industry, and who also happens to be the owner of Indulac, a significant dairy products' producer; the milk farmers' producers; the industrial processors (plaintiffs); the milk industry in general, and the consumers. Hence, all parties should be granted the outmost of opportunities to present and defend their respective positions in this public interest matter.

A review of the record shows that: (a) the Court has not issued a ruling on the preliminary injunction application, thus, the Court has yet to determine whether

the factors warranting the issuance of a preliminary injunction have been met;[11] (b) the Court has not ruled on the motions requesting dismissal of the instant action filed by Indulac, by the Hon. José O. Fabre–Laboy, and PRDFA (Docket entries No. 225, 227 and 228).

Moreover, as highlighted before, the record clearly shows that, before the consolidation request, the position held by plaintiffs, including Suiza Dairy, throughout the proceeding, was that of opposing the consolidation of the preliminary injunctive relief with the trial on the merits. The record also shows that the Court has been consistent in its ruling that the Court is at the stage of the preliminary hearing, and that based upon the parties' lack of consent for consolidation, the Court has consistently declined said request.

The Court is not persuaded by Suiza Dairy's arguments to consolidate the injunctive applications at this stage of the proceedings. The Court finds that a challenge to the constitutionality of the laws governing the milk industry in Puerto Rico requires that the parties be afforded clear and unambiguous notice of the intent to consolidate, and the parties be also provided with adequate opportunity to prepare

---

**11.** It is settled that "[a] deprivation of a [federal] constitutional right for 'even minimal periods of time, unquestionably constitutes irreparable injury.' " *DeNovellis v. Shalala,* 135 F.3d 58, 71–72 (1st Cir.1998) (citing *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). "[A] court called upon to do equity should always consider whether the petitioning party has acted in bad faith or with unclean hands." *Texaco Puerto Rico, Inc. v. Department of Consumer Affairs,* 60 F.3d 867, 880 (1st Cir.1995) (citing *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945), both standing for the proposition that the doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief"). *See generally K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d at 912 (discussing "unclean hands" doctrine in relation to the equitable maxim that "he who comes into equity must come with clean hands of necessity gives wide range to a court's use of 'discretion to withhold punishment of behavior' which it considers not to warrant so severe a sanction.") (citing *Codex Corp. v. Milgo Elec. Corp.,* 717 F.2d 622, 633 (1st Cir.1983), *cert. denied,* 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984)) (quoting *Norton Co. v. Carborundum Co.,* 530 F.2d 435, 442 (1st Cir. 1976)).

In *K-Mart,* 875 F.2d at 914–15, the Court also set forth the factors to be met for the issuance of a preliminary injunction:

[T]he traditional test for preliminary injunctions is quadripartite. In addition to irreparability of injury, we consider likelihood of merits success; effect on the public interest; and the balance of "relevant equities (most importantly, the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld).... " (Citations omitted).

It is well known that, "[t]he *sine qua non* of that formulation is whether the plaintiffs are likely to succeed on the merits. In the ordinary course, plaintiffs who are unable to convince the trial court that they will probably succeed on the merits will not obtain interim injunctive relief." *Weaver v. Henderson,* 984 F.2d 11, 12 (1st Cir.1993). *See also SEC v. Fife,* 311 F.3d 1, 8 (1st Cir.2002); *New Comm. Wireless Serv. Inc. v. SprintCom, Inc.,* 287 F.3d 1, 9 (1st Cir.2002) ("The *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity"); *Auburn News Co. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981) ("[T]he probability-of-success component has loomed large in cases before this court"), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982); *LeBeau v. Spirito,* 703 F.2d 639, 645 (1st Cir.1983) (affirming denial of preliminary injunction and ending inquiry after concluding that plaintiffs were unlikely to prevail on the merits). Notwithstanding the likelihood to succeed on the merits, the court, however, cannot disdain the "effect on the public" criteria.

their cases, and to be heard. *University of Texas,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175.

Furthermore, the parties are reminded that the Court has discretion, should the preliminary injunction request be provided as to any of the causes of action claimed, to "[e]ven when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial." (Emphasis supplied). Fed.R.Civ.P. 65(a)(2). The court envisions a short period of discovery similarly to the originally claimed by defendants, should the injunctive relief be granted, as to any cause of action. The matter as to the potential discovery time for preparation to the trial, however, at this time is premature.

### *Conclusion*

In view of the foregoing, and based upon the discretion of the Court, Suiza Dairy's request for consolidation of injunctive applications (Docket No. 329), is hereby **DENIED** at this late stage of the proceedings.

IT IS SO ORDERED.