Samuel **LOPEZ QUINONEZ,** et als., **Plaintiffs,**

v.

**PUERTO RICO NATIONAL GUARD,** et als., **Defendants.**

Civil No. 04–2187 (DRD).

United States District Court, D. Puerto Rico.

Oct. 2, 2006.

Efrain Maceira–Ortiz, URB. Perez Morris, San Juan, PR, for Plaintiffs.

Jorge Martinez–Luciano, Pedro Ortiz Alvarez Law Offices, Ponce, PR, Francisco A. Ojeda–Diez, P.R. Department of Justice, Federal Litigation, San Juan, PR, for Defendants.

### AMENDED OPINION AND ORDER

DOMINGUEZ, District Judge.

The above captioned case is a claim filed under 42 U.S.C. § 1983 against officers of the Puerto Rico National Guard in their personal and official capacities ("PRNG"), alleging violations under the First, Fifth and Fourteenth Amendments of the United States Constitution. The Court has jurisdiction under 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1331.

### I. *The Complaint*

Plaintiff, a career employee at the PRNG as General Services Director, claims that because he did not favor the Popular Democratic Party ("PPD") and supports the New Progressive Party ("NPP"), immediately after the elections of November of 2000 (the PPD won the executive branch), he began to suffer persecution and discrimination by his superiors, favoring the PPD, to despoil him of his duties, authority, and responsibilities in open discrimination and by acts to obligate him to resign, by further refusing to provide him required training, and/or required indispensable information (passwords to the computerized system) which would cause his ultimate termination.

The complaint alleges for example that on November 8, 2000, immediately after the elections, defendant Colón García, Administrative Executive Director of the Puerto Rico National Guard, a well known supporter of the PPD, attempted to despoil plaintiff of his functions, specifically, plaintiff's responsibilities to supervise and to provide instructions to employees under his supervision. Other politically motivated actions are alleged against Francisco A. Márquez–Haddock, as the Adjunct General of the Puerto Rico National Guard when he took office on February 2, 2001, as an appointed member of the new PPD Government, to induce plaintiff to resign and/or to cause his ultimate termination. Josefa Burgos, the Administrative Executive Director of the Puerto Rico National Guard is also charged in the complaint with conduct in violation of Plaintiffs' constitutional rights to cause plaintiff's resignation or to incur in conduct leading to his termination. Other executives of the PRNG were also sued in their official and personal capacities.[1] The alleged conduct

---

1. Marimir Morales, Director of Human Resources, Eva Aponte, Sub–Director of General Services of the PRNG; Nelson Reyes Avilés, Special Assistant of the PRNG. All sued in

was performed by defendant because of plaintiff's protected political beliefs in violation of plaintiffs constitutional rights protected under the First Amendment redressed under § 1983 of the Civil Rights legislation. The claim is basically a political discrimination claim against plaintiffs by co-defendants supporters of the PPD, plaintiff being a supporter of statehood.

For example, plaintiffs' claim that defendants José E. Colón García and Josefa Burgos Reyes, Administrative Executive Director, incurred in the following conduct designed for plaintiff to involuntarily resign (constructive discharge) or designed for him not to be able to comply his duties enabling him to be ultimately terminated:

a. Requiring personnel under plaintiff supervision to report directly to co-defendant Burgos and Aponte, bypassing plaintiff.

b. Codefendant Colón appointed other employees to do plaintiff's work without previous notice to plaintiff.

c. Plaintiff was prohibited from attending seminars related to his division.

d. Plaintiff was deprived of access to the Puerto Rico National Guard information system.

e. Plaintiff was deprived of a password to register contracts.

Other allegations are made as to other co-defendants seeking defendant to resign and/or to cause that he not be able to comply with his duties causing eventual termination. *See* § 24, § 26, § 30, § 32 of the complaint (relating to plaintiffs despoiling of functions and/or information, and training as to proper use of the computerized system including lack of a password to access the system and necessary to perform his duties; all only for later to be used as a pretext to terminate him for lack of performance of duties created specifically by the lack of information, training, and password denied by defendants).

The conduct of hostile environment and political discrimination lasted for over three years culminating in a letter of disciplinary charges dated June 17, 2004, received one month thereafter, on July 21, 2004. The intention was to terminate a seven year employee due to his protected political support to the statehood cause NNP, notwithstanding the employee having received excellent evaluations. The trumped up charges included that, notwithstanding plaintiff being despoiled of his authority to supervise an employee to register the contracts of the PRNG with the officer of the Comptroller and lack of password to enter, the disciplinary charges dated July 21, 2004, held plaintiff responsible for failure to supervise the employee to register with the Comptroller's office, the registration of contracts of the PRNG and not registering the contracts himself. All notwithstanding that he was purposely denied a password to register the contracts at the Comptroller's office.

Defendants denied any political violations, denied knowledge of plaintiffs protected beliefs, and affirmatively alleged valid disciplinary reasons for his termination and further claimed that his position was one of trust requiring political affiliation.[2]

## II. *Injunctive Relief*

Plaintiff requested injunctive relief. *See* Introductory paragraph of the Amended Complaint (Docket No. 58). The Court decided, discretionarily, to hold a prelimi-

---

their personal and official capacities, all being supporters of the PPD.

**2.** A motion remains pending under consideration of the Court, as to the defense of plaintiff holding a position of trust requiring political affiliation.

nary injunction hearing. Hearings began on September 8, 2005 (Docket No. 72). Nine (9) hearings dates continued (Docket entries No. 76, 79, 80, 85, 103, 104, 105 and 116). The last hearing was held on July 6, 2006. Unfortunately, the injunction relief hearing, were interrupted and procrastinated due to the fact that the Court was hearing also an injunctive relief in the case of *Vaquería Tres Monjitas, Inc., et al. v. Laboy*, 448 F.Supp.2d 340 (D.P.R.2006) (involving the entire milk industry—farmers, processors, and elaborators of fresh milk and of UHT milk), wherein the Court has held forty-nine (49) days of hearings during the same period of the case at hand. *See Vaqueria Tres Monjitas, Inc.*, 448 F.Supp.2d. at 340, 2006 WL 2560486, *1. Furthermore, this Court has held trial in various criminal cases in the *interim*.

■ As to the preliminary injunctive relief we are guided by the quadripartite test when considering the request. The four factors are:

(1) the likelihood of success

(2) the potential for irreparable injury

(3) balancing of the equities

(4) the effect on public interest of a grant or denial of the restrainer. *Narragansett Indian Tribe, et al. v. Guilbert*, 934 F.2d 4, 5 (1st Cir.1991).

■ The Court is of the opinion that should plaintiff prevail there exists compliance with the criteria of presence of irreparable injury since "[a] deprivation of a [federal] constitutional right for 'even minimal periods, unquestionably constitutes irreparable injury'." *DeNovellis v. Shalala*, 135 F.3d 58, 71–72 (1st Cir.1998) (citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). There is a Constitutional First Amendment claim alleged as the basis for the discriminatory employee termination.

However, it is well established that, "[t]he *sine qua non* of that formulation is whether the plaintiffs are likely to succeed on the merits. In the ordinary course, plaintiffs who are unable to convince the trial court that they will probably succeed on the merits will not obtain interim injunctive relief." *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir.1993). *See also SEC v. Fife*, 311 F.3d 1, 8 (1st Cir.2002). Furthermore, "[t]he *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity". *New Comm. Wireless Serv. Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir.2002); *see also Auburn News Co. v. Providence Journal Co.*, 659 F.2d 273, 277 (1st Cir.1981) ("[T]he probability-of-success component has loomed large in cases before this court"), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982); *LeBeau v. Spirito*, 703 F.2d 639, 645 (1st Cir.1983) (affirming denial of preliminary injunction and ending inquiry after concluding that plaintiffs were unlikely to prevail on the merits). The determinative criterion of the quadripartite test is, therefore, the likelihood of success.

The Court must clarify that the instant case is a case to be tried by jury by specific request in the Complaint. The Court further notes after reviewing the submissions of the parties, to wit: the Motion Requesting Urgent Temporary Injunction Relief filed by plaintiff (Docket No. 46); Opposition to Injunctive Relief filed by defendants (Docket No. 49); Memorandum of Law in Support of Defendants' Request for Denial of Injunctive Relief (Docket No. 89); Plaintiff's Proposed Findings of Fact (Docket No. 126); Defendants' Preliminary Injunction Memorandum (Docket No. 125), and the evidence received at preliminary injunctive request,

that in the instant case, in order to determine likelihood of success of the outcome, the Court must resolve issues of motive and intent relating to certain facts proposed in the testimony of both plaintiffs, as well as defendants. Furthermore, the Court must enter into issues of credibility, and weighing of the evidence and issues of motive and intent in a case to be ultimately decided by the jury. The Court is reluctant to issue a judgment on the matters above described, as said determinations are within the exclusive realm of the jury.

Credibility findings and weighing of the evidence must be made by the Court on critical facts. The Court enumerates but a few examples. Plaintiff testified that defendants knew that plaintiff was a NPP supporter. (Testified by plaintiff allegedly know by the Director of Personnel, defendant Marimir Martínez–Morales, Trans. September 8, 2005, p. 10). Plaintiff wrote to defendant about his political affiliation (Trans. September 8, 2005, p. 11), but, notwithstanding, defendants testified to the contrary.

Plaintiff stated he did not receive a password to enter into the computer to register the contracts. Defendants deny said facts and/or allege that the same was unnecessary. Plaintiffs have alleged to have excellent evaluations. Defendants allege the contrary, and presented evidence to show deficient work.

Plaintiff allege that co-defendant Francisco Márquez–Haddock (the Adjunct General and Hiring Authority), Juan Colón (Executive Officer of State Affairs), and Marimar Martínez–Morales, all holding trust positions, met to discuss all the letters sent by plaintiff as to further discrimination and decided the protective course of action to undertake. This crucial conclusion constitutes an inference to be made by the jury.

Plaintiff was stripped of his password to enter the computer service impeding him from processing changes and from entering contracts in the computerized system communicating with the Comptroller's office (Trans. October 5, 2005, p.p. 16–17). The defendants deny such conduct. The matter is one of credibility and of motive and intent of defendants, if any, related to said alleged conduct.

The entire matter of the evidentiary value of the evaluations of plaintiff compared to the alleged poor work performance testified by defendants constitutes a weighing of testimony and a credibility matter. This matter is critical to the outcome of this case.

Further, the matter of stripping the password of plaintiff enabling him to enter the computer issue and then terminating him for not entering the contracts in the computer is also a matter of credibility since defendants proffer that he had the password.

The results of hostility in employment to force plaintiffs resignation by slowly and methodically stripping him of his duties and/or by taking employees supervised by him and/or by taking employees assigned to him is a credibility issue and of weighing of evidence. The Court finds that the federal case law bars the Judge from usurping functions that belong to the jury.

### III. Credibility Findings, Weighing of the Evidence, and Issues of Motive and Intent

In *Pullman–Standard v. Swint*, 456 U.S. 273, 287–288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), the Court stated that issues of intent to discriminate constitute a pure question of fact, and that pre-trial procedures, such as summary judgment "should be used sparingly ... where motive and intent play leading roles." Further "under such circumstances, **jury judgments** about credibility are typically

thought to be of special importance." (Emphasis added.) *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir.1983). Further in *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 895 (1st Cir.1988), the Court in a sex discrimination case stated the following as to jury determinations adopting language expressed in *Stepanischen, supra.* The adopted language is that in discrimination discharge cases, particularly, a plaintiff "will rarely, if ever be able to produce a 'smoking gun' that provides, direct subjective evidence of an employer's misconduct. Further, a plaintiff **must try to convince the fact finder** [the jury] to draw an inference from a broad array of circumstances and often conflicting evidence." *Id.* Further, in the recent discrimination case of *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court stated that "credibility determinations, the weighing of evidence and the drawing of legitimate inferences from the facts are jury functions, **not those of a Judge.**" (Emphasis added). Further in *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), the Court stated that "when the issues of motive and intent play leading roles" the Court should not dispose of the case at preliminary stages but should allow the witness be "present" and the jury should assess "credibility and weight ... [to] be given [to] their testimony. ..." *See also Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 433 (1st Cir.2000). ("Determinations of motive and intent ... are questions better suited for the jury" (citing *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 677 (1st Cir.1996). Moreover, in *Greenburg v. Puerto Rico Maritime Shipping Authority, et al.*, 835 F.2d 932, 936 (1st Cir.1987), the Court stated that issues of motive are usually not appropriate in a summary judgment for

"these questions [are] better suited to be resolved by the trier of facts." *See also Coll v. PB Diagnostic Systems, Inc.*, 50 F.3d 1115, 1121 (1st Cir.1995); *Oliver v. Digital Equipment Corporation*, 846 F.2d 103, 107 (1st Cir.1988); *Stoutt v. Banco Popular de Puerto Rico*, 158 F.Supp.2d 167, 171–172 (D.P.R.2001).

The Court recognizes that all citations alluded herein are within the contexts of a summary judgment. Notwithstanding, they stand for the proposition that the Judge is not usurp the functions of as to credibility, weighing of evidence and/or issues of motive and intent. In order for the Judge, in the instant case, to make the critical determination of "likelihood of success" which is the *"sine qua non* of the formulation" of the injunction, *Weaver v. Henderson*, 984 F.2d at 12, "the remaining factors being a question of idle curiosity" *Auburn News Company, Inc. v. Providence Journal Company, et al.*, 659 F.2d 273, 277 (1st Cir.1981), the Court must, in the instant case, precisely determine issues of credibility, motive and intent, and weighing the evidence. The Court is reluctant because the instant case is plagued with such determinative issues. There are some admissions by parties on both sides, but the Court is reluctant to decide the "likelihood of success" because none of the admissions is outcome determinative and there is no "smoking gun" in the instant case as is the case in most discrimination cases, *Stepanischen*, 722 F.2d at 929, repealed in *Lipsett*, 864 F.2d at 895. The Court recognizes some discretion to determine facts within the context of a Rule 65 Preliminary Injunction, however, in this case, the credibility determinations weighing of evidence and motive and intent issues are outcome determinative, and this Court prefers that said determinations be made by the jury. After all, "credibility determinations, the weighing of evidence

and the drawing of legitimate inferences from the facts are **jury determinations,** not **those of a judge**" (emphasis added), *Reeves,* 530 U.S. at 150, 120 S.Ct. 2097.

## IV. *Conclusion*

█ The Court, therefore, must deny the preliminary injunctive relief without determining any negative inference as to "likelihood of success" merely determining that these critical functions are within the exclusive province of the jury. This case shall be set in accelerated trial as to a permanent injunctive mode. The Court shall set this case for an Initial Scheduling Conference, Status *Conference, Discovery Conference, on October 18, 2006 at 5:00 p.m.* The Court shall provide the parties a short period of discovery and shall set the case for trial shortly thereafter.[3]

The motion as to preliminary injunction is DENIED as the Court considers that the preliminary injunctive relief in this case, being one to determine likelihood of success and there being no "smoking gun" evidence, precludes the Court, at this stage, from deciding issues of credibility, weighing of evidence, and issues of motive and intent in order to determine the required injunctive criterion of "likelihood of success." The Court is of the opinion that the described issues are outcome determinative to be made by the jury.

IT IS SO ORDERED.

---

**3.** The Court is cognizant of a pending motion to dismiss based on defendants being employed in a trust position requiring political policy making functions. Nothing expressed herein is to be interpreted as to the outcome of said motion. Should said motion be decided against plaintiff, trial is to be vacated.