PLAGER, Circuit Judge,
concurring.
The court concludes, I think properly, that a direct challenge by Mr. Preminger to the validity of VHA Directive 2008-053 is barred under our rules as untimely. However, the Secretary placed at issue the validity of the Directive by relying on it when he denied Mr. Preminger’s request *1355 for rulemaking. It is at least arguable that, in order to ensure full review of the matter over which we hold we do have jurisdiction — the denial of the petition for rulemaking — we might consider the directive’s validity, but only as it relates to our review of the Secretary’s denial of that petition. In other words, Mr. Preminger might be entitled to challenge the Directive, not as an initial matter regarding its validity, but for the limited purpose of showing that the Secretary’s reliance on it in denying the request for rulemaking was unfounded. In my view, for the reasons I shall explain, even such a challenge would prove futile.
The questions thus posed would be what kind of “rule” is VHA Directive 2008-053? Does 5 U.S.C. § 553 require that it be promulgated pursuant to notice- and-comment procedures? Should it have been published in the Federal Register pursuant to § 552(a)(1)? What are the consequences if either or both of these requirements were not met? Mr. Preminger argues that the requirements of both § 552 and § 553 apply to the Directive, that therefore it is invalid, and that the Secretary’s decision on his petition, which decision relied on the Directive, is therefore invalid. It is fair to say that the Government disagrees.

1. Notice-and-Comment under Section 553

Mr. Preminger contends that VHA Directive 2008-053 is procedurally defective because it was not issued in accordance with the notice-and-comment rulemaking procedures of § 553. This argument assumes that the Directive is a legislative rule rather than one of the rules or statements that are exempt from notice-and-comment rulemaking, i.e., “interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice.” § 553(b).
Generally, legislative rules requiring notice and comment are those that “effect a change in existing law or policy or which affect individual rights or obligations.” Paralyzed Veterans, 138 F.3d at 1436. Legislative rules have the “force and effect of law” and have binding effect outside the agency. Splane, 216 F.3d at 1064. In contrast, interpretive rules, for example, “clarify or explain existing law or regulations .... ‘[A]n interpretative statement simply indicates an agency’s reading of a statute or a rule. It does not intend to create new rights or duties, but only reminds affected parties of existing duties.’ ” Paralyzed Veterans, 138 F.3d at 1436 (quoting Orengo Caraballo v. Reich, 11 F.3d 186,195 (D.C.Cir.1993)).
VHA Directive 2008-053, entitled “Voting Assistance for VA Patients,” provides guidance to VHA facility directors on how to provide VA patients with information regarding their right to register and vote as set forth in 38 C.F.R. § 17.33(a)(4)(iv). J.A. 5. The Directive states that help from state and local officials, as well as nonpartisan groups, is welcome, but warns that “all assistance must be coordinated with the facility to avoid disruptions and ensure consistency with 38 C.F.R. § 1.218(a)(14).” Id. Facility directors are instructed to ensure that there is a written published policy on voter assistance that addresses, among other things, “[cjriteria for evaluating the time, place, and manner of voter registration and voter assistance activities,” and “[procedures for coordinating offers of assistance in providing voter registration and voter assistance from state and local governments and nonpartisan organizations and for consulting with Regional Counsel regarding determining the nonpartisan character of groups offering such assistance.” Id.
This Directive does not effect any change in law or regulation or affect indi *1356 vidual rights. To the contrary, it merely provides guidance to VHA facility directors on how to implement existing regulations while protecting existing rights. The Directive certainly does not change the substantive rights of VA patients to register and vote, and indeed its purpose is to assist patients who wish to exercise those rights. Nor does the Directive modify the rights of those who wish to hold voter registration drives. The VA under the existing regulation, § 1.218(a)(14), can continue to prohibit voter assistance from partisan groups, and voter assistance from nonpartisan groups is welcomed so long as it is coordinated with the facility. Mr. Preminger alleges that the Directive “rescinds the express authorization to conduct voter registration drives contained in” an earlier VHA Directive. Reply Br. 12. While the earlier Directive is not in the record, it is apparent from other statements in the briefs that the earlier Directive also required review of offers for voter registration assistance.
Because the Directive does not effect a change in existing law or policy or affect individual rights or obligations, it is not a “legislative rule” subject to the notice-and-comment rulemaking process.

2. Publication in the Federal Register Under Section 552(a)(1)

Mr. Preminger also argues that, even if notice-and-comment procedures were not required for VHA Directive 2008-053, the VA violated the FOIA publication requirement of § 552(a)(1) by failing to publish the Directive in the Federal Register. That section requires publication of various documents, including “substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency.” § 552(a)(1)(D). The statute does not require publication of other documents, including “administrative staff manuals and instructions to staff that affect a member of the public,” § 552(a)(2)(C), and “those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register.” § 552(a)(2)(B).
Although the Government in its brief does not focus on the question of whether the Directive is subject to the publication requirement of § 552(a)(1), the Government essentially concedes that the Directive is an interpretive rule or a policy statement. I need not decide whether the Directive falls within the scope of § 552(a)(1), however, because Mr. Preminger has not established the prerequisite of harm caused by the VA’s decision not to publish the Directive in the Federal Register.
Section 552(a)(1) provides that “[ejxcept to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published.” As indicated earlier, Mr. Preminger has not alleged that he has been “adversely affected by” the Directive. Furthermore, Mr. Preminger received actual notice of the Directive and its contents when he received the Secretary’s letter denying his request for rulemaking.[1]
Accordingly, any failure of the VA to publish the Directive in the Federal Register was harmless to Mr. Preminger and is not grounds for invalidating the Directive. See Splane, 216 F.3d at 1065; Caribbean Produce Exch., Inc. v. Sec’y of Health & Human Servs., 893 F.2d 3, 7 (1st Cir.1989) *1357 (“[T]he failure to publish in the Federal Register does not automatically invalidate an administrative regulation or guideline.” (quotations and citations omitted)); New York v. Lyng, 829 F.2d 346, 354 (2d Cir. 1987) (“[T]he requirement for publication attaches only to matters which if not published would adversely affect a member of the public.” (quotations and citations omitted)).

S. The First Amendment Challenge

VHA Directive 2008-053 gives guidance on how to provide veterans at VHA facilities with voter assistance in a way that is consistent with the governing regulation, 38 C.F.R. § 1.218(a)(14). We held in Preminger I that 38 C.F.R. § 1.218(a)(14) does not on its face violate the First Amendment. Preminger I, 517 F.3d at 1316-17. Mr. Preminger now challenges the Directive on essentially the same First Amendment grounds. But the scope and operational effect of the Directive is necessarily tied to the governing regulation that it purports to explain and implement, so that most of his arguments parallel those that were made and rejected in the earlier ease. There is no need to revisit the previously decided matters.
A response to Mr. Preminger’s purportedly new Constitutional arguments directed to the Directive can be made rather summarily. He alleges that VHA Directive 2008-053 applies to all VA property, not just medical facilities, thus suggesting that the Directive applies in public fora. This is relevant because the test for whether speech restrictions on Government property are permissible depends on whether the property is a public forum, a designated public forum, or a nonpublic forum. Preminger I, 517 F.3d at 1311. In Preminger I, we concluded that VA medical centers were nonpublic fora, and therefore VA restrictions on speech were permissible so long as they were reasonable and viewpoint neutral. Id.
There is no support for Mr. Preminger’s allegation that the Directive applies to many types of VA property, including libraries, universities, public housing, and recreational facilities. The Directive, entitled ‘Voting Assistance for VA Patients,” was issued to directors at VA hospitals and addresses voting assistance for VA patients in VHA facilities. In its opening sections entitled Purpose and Background, the Directive notes that “The right to register and vote is one of the explicit rights set forth in the VA patients’ rights regulation in Title 38 Code of Federal Regulations (CFR) § 17.33.” The document then notes that “information about these rights, including the right to vote, is posted at each nursing station.” One need not ask how many nursing stations one typically finds in VA libraries or recreational facilities in order to conclude that on its face the Directive applies only to VHA medical facilities.
Mr. Preminger also argues that the Directive is unconstitutional because it “restores” the broad discretion of VA officials that we “interpreted out of’ § 1.218(a)(14) to avoid finding the regulation unconstitutional. Reply Br. 5. One problem with this argument is that we did not interpret anything “out” of the regulation. In response to Mr. Preminger’s petition in the earlier case for panel rehearing, we simply explained in more detail our original holding that the regulation contained ad equate, specific standards to guide the VA’s exercise of discretion to authorize or refuse to authorize a particular demonstration. Preminger I, 517 F.3d at 1315-16.
Furthermore, the Directive does not give local VHA officials unfettered discretion to authorize or restrict speech at will. In Preminger I, we held that VA officials must have the discretion to decide whether authorizing a particular activity would disrupt services offered in the facility and *1358 impede the ability of the facility to achieve its mission of providing health care for veterans. Id. As set forth in the Directive, VHA facility directors are to be guided by the standards in § 1.218(a)(14) in establishing procedures for voter assistance at each facility. The Directive does not, and cannot, impermissibly broaden officials’ discretion by somehow eliminating these standards.
For all of the above reasons, I conclude that Mr. Preminger’s challenge to the Secretary’s denial of the requested rulemaking is properly denied by us, whether on the narrow basis the court announces in its per curiam opinion, or as a result of the more detailed discussion of his arguments presented here.

. All VHA Directives currently in effect, including Directive 2008-053, are available to the public on the VA website, http://wwwl.va. gov/vhapublications/publications.cfm?pub= 1.