# United States Court of Appeals
## For the First Circuit

No. 07-1186

VENTURE TAPE CORPORATION,

Plaintiff, Appellee,

v.

MCGILLS GLASS WAREHOUSE; DON GALLAGHER,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Lipez, Circuit Judges.

Christopher J. Cunio, with whom Jaimie A. McKean and Cooley
Manion Jones LLP were on brief, for appellee.
Chloris DeBrauwere for appellants.

August 28, 2008

**LIPEZ**, **Circuit Judge**. McGills Glass Warehouse ("McGills"), an internet-based retailer of stained-glass supplies, and its owner Donald Gallagher, appeal from a district court judgment finding them liable for infringement of the registered trademarks "Venture Tape" and "Venture Foil," and awarding the marks' owner, Venture Tape Corporation ("Venture"), an equitable share of McGills' profits, as well as costs and attorney's fees. We affirm.

## I.

In 1990, Venture, a manufacturer of specialty adhesive tapes and foils used in the stained-glass industry, procured two federal trademark registrations (Nos. 1,579,001 and 1,583,644) for products called "Venture Tape" and "Venture Foil," respectively. Over the next fifteen years, Venture expended hundreds of thousands of dollars to promote the two marks in both print and internet advertising. Consequently, its products gained considerable popularity, prestige, and good will in the world-wide stained glass market.

Through its internet website, McGills also sells adhesive tapes and foils which directly compete with "Venture Tape" and "Venture Foil." Beginning in 2000, and without obtaining Venture's permission or paying it any compensation, McGills' owner Donald Gallagher intentionally "embedded" the Venture marks in the McGills website, both by including the marks in the website's metatags - a

component of a webpage's programming that contains descriptive information about the webpage which is typically not observed when the webpage is displayed in a web browser - and in white lettering on a white background screen, similarly invisible to persons viewing the webpage. Gallagher, fully aware that the McGills website did not sell these two Venture products, admittedly took these actions because he had heard that Venture's marks would attract people using internet search engines to the McGills website.

Because the marks were hidden from view, Venture did not discover McGills' unauthorized use of its marks until 2003. It then promptly filed suit against McGills and Gallagher in federal district court, alleging federal trademark infringement, Lanham Act § 32, 15 U.S.C. § 1114(1) (Count 1),[1] unfair competition, id. § 43(a), 15 U.S.C. § 1125(a) (Count 2), false designation of origin,

---

[1]Lanham Act § 32 provides, in pertinent part:

Any person who shall, without the consent of the registrant - use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive - shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).

id. (Count 3),[2] and trademark dilution, Mass. Gen. Laws. Ann. ch. 110B, § 12 (Count 4).[3]  After conducting lengthy discovery, the parties filed cross-motions for summary judgment on all four counts of the complaint.  The district court conducted a motion hearing, granted summary judgment for Venture on all counts, and requested that Venture submit a motion itemizing any damages, costs, and attorney's fees attributable to McGills' trademark infringement, all of which are potentially recoverable under the Lanham Act.  See Lanham Act § 35, 15 U.S.C. § 1117(a).

---

[2]Lanham Act § 43(a) provides, in pertinent part:

Any person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which - is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person - . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

[3]The state statute, since repealed, provided in pertinent part:

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

Mass. Gen. Laws Ann. ch. 110B, § 12 (repealed 2006).

Although Venture adduced evidence that McGills generated almost $1.9 million in gross sales during the period of its infringement from 2000-2003, Venture eventually requested only $230,339.17, the amount that it estimated to be McGills' net profits. Citing McGills' willful infringement and alleging McGills engaged in obstructionist discovery tactics, Venture sought $188,583.06 in attorney's fees and $7,564.75 in costs. After a hearing on Venture's motion, the district court granted Venture's requested recovery. McGills and Gallagher now appeal from the district court's grant of summary judgment to Venture on Lanham Act liability, and from the district court's award of profits and attorney's fees.

## II.

### A.        Lanham Act Liability

McGills first contends that the district court improvidently granted summary judgment for Venture on appellees' liability under the Lanham Act.[4] Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

---

[4]The Lanham Act and the state trademark dilution statute impose comparable standards of liability, see Mass. Gen. Laws Ann. ch. 110B, § 12 ("likelihood of injury to business reputation"). On appeal, McGills does not address the grant of summary judgment to Venture on Count 4, the state trademark dilution claim. Hence we do not address it either.

-5-

matter of law." Fed. R. Civ. P. 56(c); see also Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 24 (1st Cir. 1989). We review the district court's grant of summary judgment de novo. Colt Def. LLC v. Bushmaster Firearms, Inc., 486 F.3d 701, 705 (1st Cir. 2007).

"The purpose of a trademark is to identify and distinguish the goods of one party from those of another. To the purchasing public, a trademark 'signi[fies] that all goods bearing the trademark' originated from the same source and that 'all goods bearing the trademark are of an equal level of quality.'" Id. (quoting 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 3:2 (4th ed. 2007)) (internal citation omitted). To establish trademark infringement under the Lanham Act, Venture was required to prove that: (1) it owns and uses the "Venture Tape" and "Venture Foil" marks; (2) McGills used the same or similar marks without Venture's permission; and (3) McGills' use of the Venture marks likely confused internet consumers, thereby causing Venture harm (e.g., lost sales). See Star Fin. Servs., Inc. v. AASTAR Mortgage Corp., 89 F.3d 5, 9 (1st Cir. 1996); 15 U.S.C. § 1125(a). The parties agree that no genuine factual dispute exists concerning the first two elements of proof.[5]

---

[5]Venture's registration of the two marks, when coupled with its continuous use of them from 1990 to 1995, is incontestible evidence of Venture's exclusive right to use the marks. See Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 820 (1st Cir. 1987). Further, McGills concedes that, without Venture's permission, Gallagher embedded the marks verbatim on the McGills website.

-6-

Our focus then becomes the "likelihood of confusion" among internet consumers. This inquiry requires us to assess eight criteria: (1) the similarity of Venture's and McGills' marks; (2) the similarity of their goods; (3) the relationship between their channels of trade (e.g., internet-based commerce); (4) the relationship between their advertising; (5) the classes of their prospective purchasers; (6) any evidence of actual confusion of internet consumers; (7) McGills' subjective intent in using Venture's marks; and (8) the overall strength of Venture's marks. Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 10 n.6 (1st Cir. 2008) (citing Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981)) [hereinafter "Pignons factors" or "Pignons analysis"].[6] No single criterion is necessarily dispositive in this circumstantial inquiry. Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 120 (1st Cir. 2006).

By the conduct of its case below, McGills effectively admitted seven of the eight elements of the Pignons analysis. The record contains numerous admissions that metatags and invisible background text on McGills' website incorporated Venture's exact marks. In his deposition, Gallagher admitted that the parties are

---

[6]Venture's unfair competition claim (Count 2) and false designation claim (Count 3) are subject to the same legal standard -- namely, "likelihood of confusion" -- as its Count 1 infringement claim. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780 (1992).

direct competitors in the stained glass industry and that both companies use websites to promote and market their products. Gallagher even admitted that he intentionally used Venture Tape's marks on McGills' website for the express purpose of attracting customers to McGills' website and that he chose "Venture Tape" because of its strong reputation in the stained glass industry. These admissions illustrate the similarity (indeed, identity) of the marks used, the similarity of the goods, the close relationship between the channels of trade and advertising, and the similarity in the classes of prospective purchasers. They also support the conclusions that McGills acted with a subjective intent to trade on Venture's reputation and that Venture's mark is strong. Accordingly, only the sixth factor – evidence of actual consumer confusion – is potentially in dispute.

On appeal, McGills argues that Gallagher had no way of knowing whether or not his use of the Venture marks on the McGills website had been successful, i.e., whether the marks actually lured any internet consumer to the website.[7] Thus, the company contends

_____

[7]The bulk of the other arguments raised by McGills on appeal were not raised below, and are therefore waived for purposes of appeal. Accordingly, we need not address them here. They include assertions that: (1) the district court's Pignons analysis depended on Venture's deliberately misleading record citations, by which Venture falsely implied that Gallagher had admitted "every" aspect of Lanham Act liability; (2) Venture misled the district court with respect to the Pignons "channel of trade" factor by misrepresenting that McGills and Venture both used their websites to "sell" their respective products; (3) Venture's Exhibit E, which purported to show that McGills' use of the marks had led consumers looking for

that summary judgment in Venture's favor was improper because there was no evidence of actual confusion. However, McGills' various protestations below and on appeal that there is no direct evidence of actual consumer confusion, even if accepted as true, are ultimately beside the point.

Although Venture might have attempted to adduce evidence of actual consumer confusion (e.g., internet user market surveys) in support of a favorable Pignons determination, the absence of such proof is not dispositive of the Pignons analysis. "[A] trademark holder's burden is to show likelihood of confusion, not actual confusion. While evidence of actual confusion is 'often deemed the best evidence of possible future confusion, proof of actual confusion is not essential to finding likelihood of confusion.'" Borinquen Biscuit, 443 F.3d at 120 (citations omitted); see also Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1050 (9th Cir. 1999) ("[D]ifficulties in gathering evidence of actual confusion make its absence generally unnoteworthy."); cf. Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992) ("[T]he district court erred in suggesting that proof of actual harm to Nestle's goodwill was a prerequisite to finding a Lanham Trade-Mark Act

---

Venture products to McGills' website, was misleading because the exhibit discloses that McGills paid Yahoo! for a priority position on search lists; and (4) Venture is barred from recovery under the equitable defenses of laches or unclean hands.

violation [because] [t]he Lanham Act contains no such proof-of-injury requirement.").

McGills' admissions regarding the other seven Pignons factors, particularly Gallagher's admission that his purpose in using the Venture marks was to lure customers to his site, permit us to conclude that no genuine dispute exists regarding the likelihood of confusion. As a result, Venture was entitled to summary judgment on the liability issue.

**B.        Award of Profits under the Lanham Act**

Because Venture established its entitlement to summary judgment on Lanham Act liability, it was potentially entitled – subject to applicable principles of equity – to recover, inter alia, McGills' profits during the period that McGills infringed the Venture marks. Lanham Act § 35(a), 15 U.S.C. § 1117(a).[8] McGills

_____

[8]Lanham Act § 35(a) provides:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount

argues on appeal that the district court erred in awarding Venture $230,339.17, McGills' net profits for the three-and-a-half-year period of infringement, pursuant to section 1117(a). We review de novo the legal standard by which the award was calculated and review for clear error the factual findings supporting the award. Tamko Roofing Prods., Inc. v. Ideal Roofing Co., 282 F.3d 23, 35 (1st Cir. 2002).

McGills first contends that, because it filed a timely demand for a jury trial in its answer and never stipulated to the withdrawal of that demand, the district court violated its Seventh Amendment rights when it determined the amount of McGills' profits, rather than submitting the question for jury resolution. However, the right to a jury trial can be waived. CoxCom, Inc. v. Chaffee, Nos. 07-2030, 07-2031, ___ F.3d ___, 2008 WL 2954968, at *7 (1st Cir. Aug. 4, 2008). "[A] party's participation in a bench trial without objection constitutes a waiver of a jury trial right." Id.; see also United States v. 1966 Beechcraft Aircraft Model King

---

found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a).

<u>Air</u>, 777 F.2d 947, 951 (4th Cir. 1985) (jury right waived where parties "fully and vigorously participated in the bench trial, making no mention of their early jury demand"). Here, McGills' counsel appeared at the remedies hearing and made a variety of arguments challenging Venture's request. Counsel never objected that the remedies issue should be tried by a jury rather than determined by the judge. This acquiescence represents a waiver of McGills' prior jury demand. <u>See</u> <u>CoxCom</u>, 2008 WL 2954968, at *7 (holding that appellants' "active participation both leading up to and during the bench trial," coupled with a failure to "specifically object to the lack of a jury," constituted waiver).

McGills raises two substantive objections to the award of profits.[9] First, the company challenges the district court's finding that the infringement here was "willful," asserting that such a finding is a prerequisite to an award of profits under the Lanham Act. We have previously declined to reach the question of whether "willfulness" is required as a foundation for such an award, <u>see</u> <u>Tamko Roofing Prods.</u>, 282 F.3d at 36, and we need not decide the issue here. Even assuming that "willfulness" is required, McGills has not demonstrated that the district court's

---

[9]On appeal, McGills also argues that the district court erred in awarding profits based on an infringement period of three-and-a-half years. McGills claims that there was no evidence other than "guesses and approximations" regarding the length of time the infringing marks had been embedded in McGills' website. McGills has waived this argument by failing to raise it below.

finding of "willfulness" was clearly erroneous. McGills asserts that Gallagher's admittedly intentional use of the Venture marks to lure customers to his site was not "willful" because Gallagher was unaware that such use of the marks was illegal. However, the district court specifically noted that McGills had programed its website so that Venture's marks were displayed in the same color as the webpage background, concealing them from view. We can find no clear error in the district court's conclusion that such intentional concealment provides strong circumstantial evidence of "willfulness."

Second, McGills attacks the award by claiming that it overstates the actual harm to Venture. McGills first complains that Venture did not even attempt to show actual harm, and suggests that this failure means that there was no actual harm. Our case law does not support that inference. When a mark owner cannot prove actual damages attributable to the infringer's misconduct (e.g., specific instances of lost sales), its recovery of an equitable share of the infringer's profits serves, <u>inter</u> <u>alia</u>, as a "rough measure" of the likely harm that the mark owner incurred because of the infringement, while also preventing the infringer's unjust enrichment and deterring further infringement. <u>Tamko Roofing Prods.</u>, 282 F.3d at 36. The district court explicitly concluded that the profits award here was "sufficiently substantial

to serve these purposes without being unduly large or burdensome." We find no fault with this conclusion.

McGills' alternative theory is that the award of profits is overstated because the "only possible enrichment" to McGills from the use of the Venture marks would have arisen from its sales of foils and tapes. McGills argues, without marshaling any competent evidence, that its sales of those products amounted to less than one percent of its total sales. McGills complains that Venture should have known this and provided more detailed breakdowns to the court. McGills asserts that Venture "copied over 5000 records," but "carefully chose to show none of it to the Court."

This argument entirely misplaces the burden of proof for a profit award under the Lanham Act. We have held that "once the plaintiff has shown direct competition and infringement, the statute places the burden on the infringer to show the limits of the direct competition." Tamko Roofing Prods., 282 F.3d at 37. This allocation of burdens arises from the language of the Lanham Act itself: "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Here, Venture met its burden by introducing tax returns showing Venture's gross sales over the relevant time period. McGills then had the burden of producing evidentiary documentation that some of those sales

-14-

were unrelated to and unaided by McGills' illicit use of Venture's marks. The company produced no such evidence. As a result, there was no clear error in the district court's determination that $230,339.17 represented an equitable share of McGills' $1.9 million in gross sales during the three-and-a-half year infringement period.

## C.        **Attorney's Fee Award**

Finally, McGills challenges the district court's award of $188,583.06 in attorney's fees. The Lanham Act permits the court to award reasonable attorney's fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). We review such awards for abuse of discretion. Tamko Roofing Prods., 282 F.3d at 30. The district court has discretion to consider an infringement case "exceptional" if, after reviewing the totality of the circumstances, it finds that the infringer's actions were "malicious, fraudulent, deliberate, or willful." Id. at 31 (internal quotation marks omitted). As we noted above, the district court did not err in concluding that McGills' infringement was "willful." Accordingly, it did not abuse its discretion in determining that this is an "exceptional case" where an award of attorney's fees is appropriate.

**Affirmed**.