# United States Court of Appeals
## For the First Circuit

No. 10-1677

LAMEX FOODS, INC.,

Plaintiff, Appellee,

v.

AUDELIZ LEBRÓN CORP.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Lipez, Circuit Judges.

Pedro Jiménez-Rodríguez, with whom Pedro J. Santa-Sánchez, José L. Ramírez-Coll, and Adsuar Muñiz Goyco Seda & Pérez-Ochoa, PSC were on brief, for appellant.
Laura Beléndez-Ferrero, with whom Ferraiuoli Torres Marchand & Rovira, PSC was on brief, for appellee.

June 27, 2011

**LIPEZ**, <u>Circuit Judge</u>.  Defendant-appellant Audeliz Lebrón Corp. ("ALC") appeals from a judgment in favor of plaintiff-appellee Lamex Foods, Inc. ("Lamex"), which the district court entered after consolidating a preliminary injunction hearing with a bench trial on the merits under Federal Rule of Civil Procedure 65(a)(2).  The appellant argues that the district court abrogated its right to a jury trial by failing to provide indisputably clear notice of its intent to consolidate.  <u>See</u> U.S. Const. amend. VII; <u>see</u> <u>also</u> Fed. R. Civ. P. 65(a)(2) (permitting the consolidation of a preliminary injunction hearing with a trial on the merits, but noting that "the court must preserve any party's right to a jury trial").

Although we appreciate the district court's efforts to resolve the parties' dispute in an efficient and timely manner, we agree with ALC that the court's inadequate notice of its intent to consolidate abrogated ALC's right to a jury trial.  Rejecting appellant's other arguments, we vacate the judgment in part and remand for further proceedings.

I.

**A. Factual Background**

Lamex is a Minnesota corporation that facilitates the sale of food from manufacturers to suppliers and vendors worldwide. Around February 2007, Lamex entered into a business relationship in which it purchased frozen chicken from George's Farms, Inc.

("George's") and resold the product to ALC, a Puerto Rico corporation that supplies frozen food products to supermarkets and other retailers throughout the Commonwealth.

The parties' business relationship encountered an obstacle around January 2009, when ALC's insurance underwriter dropped the corporation from its coverage. Lamex sought from ALC a replacement security, which ALC provided in the form of a standby letter of credit for $500,000 drawn on First Bank, a Puerto Rico financial institution. In turn, ALC requested from Lamex a matching unsecured credit for $500,000. Lamex's corporate policy prohibited such matching, but in an effort to preserve the parties' relationship, Steve Anderson, the president of Lamex, encumbered his personal funds to provide ALC with the matching credit.

In November 2009, however, the parties' cordial relationship came to an end when ALC stopped paying Lamex money owed. By that time, ALC, without remunerating appellee, had received shipments of frozen poultry totaling over $1.2 million in value. After myriad informal attempts to collect the delinquent invoices from ALC failed, Lamex canceled ALC's account, halted shipment on orders of poultry designated for ALC, and placed the unpaid-for poultry into cold storage in various facilities in Puerto Rico and on the mainland. Lamex also cashed in the $500,000 letter of credit from First Bank.

ALC responded by filing suit in the Commonwealth's Superior Court in San Juan, naming as defendants Lamex, George's, and First Bank, among others, and alleging violations of Puerto Rico's Dealers' Contract Act of 1964 ("Law 75"), P.R. Laws Ann. tit. 10, §§ 278-278e, which prohibits a principal from terminating a business relationship with a dealer without just cause, Euromotion, Inc. v. BMW of N. Am., Inc., 136 F.3d 866, 870 (1st Cir. 1998). After ALC's suit had been filed, but before service-of-process had been completed, Lamex brought the instant action in federal district court, naming as defendants ALC and its president, Audeliz Lebrón.

In its December 22, 2009 complaint, Lamex sought to recover the remainder of the monies owed to it and asked that the corporate veil be pierced to hold Lebrón personally liable for ALC's debt should the corporation be unable to pay in full. Furthermore, Lamex requested a declaratory judgment stating that it was not a "principal" for Law 75 purposes or that even if it were a principal, it had just cause to terminate its relationship with ALC. Finally, Lamex sought a preliminary injunction barring ALC from continuing a "smear campaign" against Lamex, in which ALC purportedly interfered with Lamex's attempts to find other buyers for the cold-stored poultry by telling potential buyers that Lamex and George's poultry products were entangled in a lawsuit. Lamex's complaint contained a jury demand for all of its legal claims.

## B. District Court Proceedings

### 1. The First Hearing and Status Conference

On January 14, 2010, the district court convened an initial hearing for the purpose of deciding Lamex's motion to reconsider an order granting defendants extended time to answer the complaint. After inquiring into the nature of the parties' dispute and discovering that their conflict involved the collection of outstanding debt, the court warned the litigants that "you cannot drag a case like this for a year or two, because there's no point," and encouraged them to settle. In the interim, the court put the case on an expedited schedule. It gave defendants one day to respond to the complaint. Additionally, the court established what it characterized as a "streamlined discovery process," ordering the parties to exchange all pertinent documents by January 18 and to depose two key witnesses -- Steve Anderson and Audeliz Lebrón -- by January 20.

On January 18, Lamex filed a motion to convert its request for a preliminary injunction, which it had submitted in its complaint and in a separate motion dated January 13, into a demand for a permanent injunction. The court, in an order issued on January 20, "[g]ranted [the motion] in the sense that the preliminary and permanent injunctive relief, if available, shall be considered in a consolidated hearing as requested."

Soon after, the court received notice that the parties did not finish the depositions on January 20, as ordered. Lebrón's deposition was cut short after he refused to answer questions relating to issues addressed in Lamex's prayers for declaratory judgment and preliminary injunction. At a status conference six days later, the court reviewed the transcript of Lebrón's deposition, concluded that defendants were obstructing the discovery process, and sanctioned them by ordering them to pay for any expense Lamex incurred for the thwarted deposition. At the conclusion of the status conference, the court advised the parties that the preliminary injunction hearing, which was originally set for February 1, would be advanced to January 27, the very next morning.

2. The Injunction Hearing

Decrying behavior it characterized as parties "playing hardball to avoid certain obligations," the court began the preliminary injunction hearing by emphasizing that it was committed "to help[ing] the parties . . . resolve this whole situation" in a professional manner:

> I am here to do the right thing, and that's the reason why I got really upset with you people yesterday, and that's the reason I said that if you had not taken my advice to do discovery the right way, with the purpose of trying to resolve the situation, I was going to then take the law in my own hands and force it, shove it upon you, a solution. . . . There is no way that I'm going to allow a case like this to drag for months and months when you have those amounts of money due and owing for chicken, basically, okay? And I am not going to allow this kind

of argument to linger without some sort of arbiter, [j]udge or whoever, telling you what the story is.

The court then informed the parties that "if I get at some point in time during this hearing that I should convert this into a trial on the merits, then I will do it." He advised them that "even though we are proceeding under a preliminary injunction situation, if the issues are as simple as I think they are, I'm going to take this matter and resolve it altogether, one shot." When Lamex reminded the court of its motion to convert the preliminary injunction hearing into a permanent injunction hearing, the court replied, "You already heard what I said. If I think as we progress that that's what I should do, I'm going to do it. I'm just giving you fair warning."

The court then proceeded to take the testimony of Anderson. At the conclusion of its president's testimony, Lamex again moved to have the hearing be treated as a permanent injunction hearing.[1] In response, the court stated, "I told you that I was considering doing precisely that, the consolidation. . . . But I will not make that decision until I have heard all the evidence."

When the hearing reconvened after a lunch recess, Lamex requested that the court "at least . . . enter an order for [a]

---

[1] Lamex also moved, in the alternative, for summary judgment, see Fed. R. Civ. P. 56, arguing that Anderson's testimony, combined with Lebrón's deposition, was sufficient to resolve the claims in its favor. The motion was denied.

preliminary injunction." The court admonished Lamex's counsel for making this request, reminding her that it wanted to hear all the evidence before proceeding: "Counsel, if you don't give me what I need, I'm going to just deny your motion. Simple as that." Defendants in turn moved for a judgment on partial findings under Federal Rule of Civil Procedure 52(c), on the ground that because they had already consigned money to the Superior Court, the amount in controversy was insufficient to give the federal court subject matter jurisdiction. As an alternative ground for their Rule 52(c) motion, defendants argued that Lamex failed to meet the requirements for a preliminary injunction. See Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991) (reciting the four-part preliminary injunction inquiry, which requires consideration of the likelihood of success on the merits, the potential for irreparable injury, the balance of equities for and against an injunction, and the effect on the public interest). The district court found both grounds unpersuasive and denied the motion.

Audeliz Lebrón and two employees of George's then testified, the latter two by phone. At the close of their testimony, defendants renewed their Rule 52(c) motion, adding a new argument that Lamex had failed to show irreparable harm "in as much as ample evidence has been presented that the money that was allegedly owed has already been consigned and given [to the Puerto

-8-

Rico court]."  The district court asked defendants whether they would "object to a motion filed tomorrow . . . to disburse that money immediately to Lamex," to which defendants initially responded in the negative.  But they subsequently equivocated, telling the court, "If the amounts are the same, then [Lamex] can retire the money."

The court then had the following colloquy with counsel:

THE COURT: This is what we're going to do.  I find that this is a very simple case.  I thought it was a lot more complicated.  It's an extremely simple case.
    The only issues here are, number one, what kind of intervention this [f]ederal [c]ourt can have in the context of the relations between these parties as it pertains to Law 75, having plaintiff being the one who initiated the case.
    That's number one.  And it could be as claimed by way of injunctive relief or, more probable than not, perhaps declarative judgment, if any, that could be the alternative.
    And then the other question is whether there is any issue with the payment that is due and owing supposedly.  That's all.
    Does everybody agree that those are the issues?  Plaintiff, are those the issues?

COUNSEL FOR LAMEX: Yes, Your Honor.

COUNSEL FOR ALC: Yes, Your Honor.

THE COURT: I think what I told you at the beginning, that I could consolidate this into one thing, is going to happen.  I don't think I need anything else.  All I need to do is sit down with this evidence and figure out which rights each party has to this.  Any objection to this?

COUNSEL FOR LAMEX: Your Honor, I don't have any objection to that.

THE COURT: Do you have any objection to that?

COUNSEL FOR ALC: No, Your Honor.

-9-

3. After the Injunction Hearing

A week later, the court conducted an evidentiary hearing to determine the amount of cold-storage fees Lamex incurred as a result of ALC's failure to pay its outstanding invoices.

The next day, February 5, the court issued an opinion and order disposing, on the merits, of all of the claims made in Lamex's complaint. The court denied Lamex's requests to pierce the corporate veil and for preliminary and permanent injunctive relief. However, it granted Lamex's request for a declaratory judgment absolving Lamex from liability under Law 75. Furthermore, it ordered defendants to pay the total amount due to Lamex and ordered the Superior Court of San Juan to release the money ALC consigned.[2]

After its motion for reconsideration was denied by the district court, ALC timely appealed.[3] Before us, it argues that the district court failed to provide unambiguous notice of the Rule 65(a) consolidation and, in so doing, violated its right to trial

---

[2] According to the district court, ALC owed Lamex monetary relief in the sum of $1,287,911.13 in poultry delivered; interest on that amount, calculated at 1.5% for every month ALC's account is in arrears; and storage fees totaling $56,692.12. The $500,000 Lamex already received by drawing on First Bank's letter of credit would be credited toward the total amount owed, as would the $785,097.14 held in consignment by the San Juan court.

[3] Lebrón, in his personal capacity, is not a party to this appeal.

by jury.[4]  As an additional matter, ALC asks us to vacate the court's order of sanctions for its discovery-related conduct.

## II.

## A. Right to a Trial by Jury

The Supreme Court has long counseled that "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care."  Dimick v. Schiedt, 293 U.S. 474, 486 (1935).  For this reason, once a party files a proper demand for a jury trial on its legal claims, see Fed. R. Civ. P. 38, that demand must be honored unless the parties expressly consent to withdraw the demand, see id., or subsequently waive their jury trial right by either expressly or implicitly agreeing to a bench trial, see Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 62-63 (1st Cir. 2008); Coxcom, Inc. v. Chaffee, 536 F.3d 101, 110-11 (1st Cir. 2008).

In this instance, Lamex made a general demand for a jury trial with respect to all the legal claims pled in its complaint, and ALC was entitled to rely on that demand.  In re N-500L Cases,

_____

[4] Appellant raises two additional issues related to this argument.  It contends that the Rule 65(a) consolidation deprived it of the opportunity to conduct meaningful discovery.  It further asserts that the court relied on inappropriate evidence, in particular testimony obtained remotely via telephone, in adjudging credibility and reaching a decision on the merits.  Because we vacate the judgment, we do not reach these subsidiary arguments.

-11-

691 F.2d 15, 22 (1st Cir. 1982) ("Where one party has made a demand, others are entitled to rely on the demand with respect to issues covered by the demand and need not make an independent demand of their own."). ALC says that it did so rely and, never having received clear notice from the district court of its intent to consolidate, its participation in the January 27 hearing was limited to the issue of injunctive relief. It expected that Lamex's legal claims, including the declaratory judgment related to Law 75,[5] would be resolved at a later point before a jury.[6] Lamex counters that the district court consolidated the preliminary injunction hearing with a trial on the merits after providing adequate notice, and that ALC implicitly waived the right to a jury trial by actively participating, without objection, in that consolidated proceeding.

---

[5] Although Lamex's Law 75 claim was framed as a declaratory judgment, appellant argues, and Lamex does not disagree, that Law 75 controversies are quintessentially legal, and not equitable, and thus can be heard by a jury. This court has not held that Law 75 is an action to which the Seventh Amendment attaches; however, because the parties here are in agreement on this issue, we accept that position for the purposes of this case.

[6] As it turns out, during the injunction hearing, defendants conceded the existence and amount of the debt owed to Lamex and told the court that "[i]f the amounts [that Lamex claims is owed] are the same [as that ALC consigned to the Puerto Rico court] then they can retire the money." This admission left only two legal claims: the declaratory judgment and the piercing of the corporate veil.

-12-

1. Inadequate Notice of Rule 65(a)(2) Consolidation

Rule 65(a)(2) states, in relevant part: "Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the [preliminary injunction] hearing." Fed. R. Civ. P. 65(a)(2). Although the rule facilitates "the generally admirable objective of saving time and duplication of effort," there are "hazards inherent in fully disposing of cases in such an expedited fashion -- among them incomplete coverage of relevant issues and failure to present all relevant evidence." Caribbean Produce Exch., Inc. v. Sec'y of Health & Human  Servs., 893 F.2d 3, 5 (1st Cir. 1989); see also Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981) (noting that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits," and concluding that "[i]n light of these considerations, it is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits"). Such risks are especially acute in cases that turn on credibility determinations, as a truncated hearing will often limit the parties' opportunity to present and thoroughly examine witnesses. For this reason, our law "demand[s that a trial court provide] 'indisputably clear notice' to the parties before approving . . . consolidation." Francisco Sánchez v. Esso Standard Oil Co., 572 F.3d 1, 15 (1st Cir. 2009) (quoting Caribbean Produce,

-13-

893 F.2d at 5); see also Camenisch, 451 U.S. at 395 (noting that "the parties should normally receive clear and unambiguous notice [of consolidation] either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases" (quoting Pughsley v. 3750 Lake Shore Drive Coop. Bldg., 463 F. 2d 1055, 1057 (7th Cir. 1972))).

Failure to provide indisputably clear notice of consolidation can constitute reversible error even if the right to a jury trial is not at issue.[7] See Caribbean Produce, 893 F.2d at 5-6; 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2950 (2d ed. 1995) ("[O]rdering consolidation during the course of a preliminary injunction hearing is reversible error when little or no notice is given of this change and the effect is to deprive a party of the right to present his case on the merits."). The stakes are even higher where, as here, the surprise consolidation would result in the deprivation of

---

[7] The issue of the adequacy of notice of consolidation under Rule 65(a) can arise independently of a dispute over the waiver of the jury trial right and has constitutional implications beyond the Seventh Amendment. Cf. K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 913 (1st Cir. 1989) ("It is apodictic that the district court's power in [ordering consolidation] 'must be tempered by the due process principle that fair notice and an opportunity to be heard must be given the litigants before the disposition of a case on the merits.'" (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2950 (1st ed. 1973))). Here, however, ALC argues the adequacy of notice in relation to the Seventh Amendment jury trial right. Under the circumstances of this case, we think that is an appropriate way to analyze the issue.

-14-

a party's right to prosecute or defend the remaining legal claims before a jury. In these situations, we "indulge every reasonable presumption against [construing the parties' participation in the consolidated hearing as] waiver." Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937); see also García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 645 (1st Cir. 2000) (emphasizing that "the right to a jury trial is constitutionally protected and casual waivers are not to be presumed").

In this case, the court gave the parties contradictory signals as to its intent. At the parties' first appearance before the court, which took place on January 14, Lamex requested, and the court scheduled, a hearing on Lamex's motion to enjoin defendants from "interfer[ing] with [Lamex's] course of dealing with other Puerto Rico businesses" and "performing other acts in detriment of [Lamex's] goodwill, name, and reputation." On January 20, the court granted Lamex's motion to consolidate and agreed to consider "the preliminary and permanent injunctive relief, if available . . . in a consolidated hearing." This order, which was the only written order mentioning "consolidation," was plainly not a Rule 65(a)(2) order. On the eve of the January 27 hearing, the court, despite its January 20 order, was still referring to the next morning's proceedings as a preliminary injunction hearing, and the hearing was captioned as such. Up to this point, the court and the

parties seemed to be in agreement that only the plea for injunctive relief was before the court.[8]

The confusion began the next day. At the start of the preliminary injunction hearing, the court warned the parties: "[I]f I get at some point in time during this hearing that I should convert this into a trial on the merits, then I will do it." It advised them "that even though we are proceeding under a preliminary injunction situation, if the issues are as simple as I think they are, I'm going to take this matter and resolve it altogether, one shot." This statement might provide the requisite notice of Rule 65(a)(2) consolidation if not for the court's subsequent comments. In the next breath, the court offered a different view of its intentions when it responded in the following way to Lamex's reminder that it had "requested that the preliminary injunction hearing be converted to a permanent injunction hearing": "You already heard what I said. If I think as we progress that that's what I should do, I'm going to do it."[9] This succeeding statement implied that the court's intention was only to

---

[8] Indeed, the crux of ALC's defense against the imposition of sanctions at the status conference was that Lebrón justifiably refused to answer Lamex's counsel's questions because they pertained to the Law 75 claim and not to the preliminary injunction.

[9] It is not clear why Lamex insisted on renewing a motion that had already been granted on January 20. Nor is it clear why the court made no reference to its January 20th order. These oddities confirm the confusion that permeated the proceedings.

consolidate the hearing for preliminary injunctive relief with the hearing for permanent injunctive relief, as Lamex requested, and not to reach the merits of the remaining claims. Later, the court shored up this inference when, in response to Lamex's reminding the court of its January 20 order, the court stated, "I told you that I was considering doing precisely that, the consolidation."[10] In sum, during the hearing, the court made three references to consolidation; of those three references, only the first mentioned the merits of the other claims, and the later two implied that it expected only to consolidate the proceedings for preliminary injunctive relief with those for permanent injunctive relief.

At the very end of the preliminary injunction hearing, the court compounded the confusion by stating that "I think what I told you at the beginning, that I could consolidate this into one thing, is going to happen," without clarifying what it meant by consolidating "this into one thing." It then asked whether the parties objected to "this," to which the parties answered in the

_____

[10] In responding to Lamex, the court again did not acknowledge the terms or existence of its January 20 order. Instead, it stated:

I told you that I was considering doing precisely that, the consolidation. Consolidation doesn't mean that the result is going to be favorable to you or to them. Consolidation is a technical procedural matter.
    But I will not make that decision until I have heard all the evidence. I want to receive more evidence. I need to hear you. I need to hear the other side, too. Then I'll decide.

-17-

negative.  Not once during this colloquy did the court explicitly state that it intended to dispose of all the issues on the merits or that it was proceeding under Rule 65(a)(2).

The court's contradictory and vague statements do not satisfy "the overriding requirement [of] indisputably clear notice" of the court's intention to consolidate the preliminary injunction hearing with a trial on the merits. Caribbean Produce, 893 F.2d at 5.  Indeed, statements less ambiguous than those voiced by the district court have been held to be inadequate.  See, e.g., AttorneyFirst, LLC v. Ascension Entm't, Inc., 144 F. App'x 283, 290 (4th Cir. 2005) (per curiam) (unpublished) (holding that the comment that "the preliminary injunction stage, if I do it right, will be the end of the fight," did not "constitute[] the kind of clear and unambiguous notice required by Rule 65(a)(2)"); Woe v. Cuomo, 801 F.2d 627, 629 (2d Cir. 1986) (concluding that the court's "oblique references . . . to the dispositive nature of the proceedings," including the statement that it wanted "to finally close this case . . . [o]nce and for all, at least at this level," did not provide adequate notice); Pughsley, 463 F.2d at 1056-57 (holding that a court's instruction for counsel to put on "your total case" did not provide adequate notice of consolidation, as "[p]laintiffs' counsel could reasonably have understood the judge as merely requiring a presentation . . . of the remainder of plaintiffs' 'total case' in support of their pending motion [for a

-18-

preliminary injunction]"). From the court's statements, the parties reasonably could have understood, as ALC claims that it did, that only the issue of injunctive relief was before the court, and that by "consolidation," the court meant that it would treat the preliminary injunction hearing as a permanent injunction hearing.[11]

Lamex suggests that we may infer the requisite notice from the district court's summary of the issues before it as "one, what kind of intervention this [court] can have in the context of the relations between these parties as it pertains to Law 75," and two, "whether there is any issue with the payment that is due and

---

[11] Notably, even Lamex behaved in ways consistent with this understanding: Lamex reiterated its jury trial demand for its legal claims, pressed the court at various points to convert the hearing from one for preliminary injunctive relief to one for permanent injunctive relief, and, at the hearing's conclusion, indicated that it would refrain from presenting the rest of its evidence "[i]n the interest of a speedy injunction." Lamex also called few witnesses and petitioned for liberal rules of evidence and procedure. During her questioning of Steve Anderson, for instance, Lamex's counsel specifically referenced the fact that this was a preliminary injunction hearing to argue for a more lenient standard of admissibility:

> THE COURT: We don't know what is the relationship between this [person] and ALC. Therefore, it's [not admissible until] you establish that relationship. That's it.

> COUNSEL FOR LAMEX: Your Honor, if this is a preliminary injunction hearing, just for the record, inadmissible evidence that may otherwise be admissible in a court of law at the trial –

> THE COURT: Counsel, no.

> COUNSEL FOR LAMEX: Okay, Your Honor.

-19-

owing supposedly." These comments, however, do little to clarify the scope of the issues actually at stake. By "what kind of intervention this [court] can have in the context of the relations between these parties as it pertains to Law 75," the court reasonably could be understood as pondering whether it could provide injunctive relief <u>without</u> addressing the Law 75 issues. Nor could the reference to "the payment that is due and owing supposedly" be construed unambiguously as notice of consolidation. That comment came on the heels of defendants' renewal of its motion for judgment on partial findings, <u>see</u> Fed. R. Civ. P. 52(c), in which they argued that because they had already acknowledged their debt and consigned money to the local court, Lamex could not meet the irreparable harm prong of the four-part test for a preliminary injunction.[12] Alone or in context, these statements do not constitute indisputably clear notice of the court's intent to resolve all the issues on the merits.

### 2. No Implicit Waiver of the Jury Trial Right

---

[12] Lamex countered that it was suffering irreparable harm in that ALC's delinquency and smear campaign were causing Lamex to incur cold-storage costs that would continue to skyrocket "if defendants continue their delinquent conduct." Relatedly, we note that because the cold-storage fees were part of the court's calculus on irreparable injury and because ALC conceded the amount and existence of its debt to Lamex, the court's convening of an evidentiary hearing to determine the cold-storage costs also cannot be construed as providing unambiguous notice of consolidation. Nor can ALC's participation therein imply its waiver of the jury trial right. Lamex does not argue to the contrary.

Given the court's failure to provide indisputably clear notice of consolidation, it becomes far more difficult for Lamex to argue that ALC implicitly waived its right to a jury trial. We have held that "active participation both leading up to and during [a] bench trial," combined with a failure to "specifically object to the lack of a jury," amounts to a waiver of the jury trial right. Coxcom, 536 F.3d at 111. This rule of waiver-by-conduct reflects our judgment that a losing party who has been accorded an opportunity to present its full case before a court should not be allowed to "reassert[] a right to trial by jury after a bench trial." Id.; see also Royal Am. Managers, Inc. v. IRC Holding Corp., 885 F.2d 1011, 1018 (2d Cir. 1989) (adopting the implicit waiver rule because "[i]t would be 'patently unfair' and, 'in effect, [an] ambush [of the] trial judge on appeal' if appellant were allowed 'to lodge an early demand for a jury,' participate in a bench trial without objection, and then assign as error the failure to honor the jury demand" (second and third alterations in original) (quoting United States v. 1966 Beechcraft Aircraft Model King Air A90, 777 F.2d 947, 951 (4th Cir. 1985)) (internal quotation marks omitted)).

ALC's behavior during the hearing simply was not consistent with Lamex's assertion that ALC "fully and vigorously" participated in what it understood to be a bench trial on all the remaining legal issues. Venture Tape, 540 F.3d at 63 (quoting 1966

-21-

<u>Beechcraft Aircraft Model King Air A90</u>, 777 F.2d at 951). To the contrary, because it was not clearly notified of the court's intent to adjudicate all of the issues on the merits, ALC conducted itself as though it were participating in a preliminary injunction hearing. During the January 27 proceeding, ALC acquiesced to liberal rules of evidence and procedure. It only called one witness and presented two exhibits, neither of which were in direct support of its claim that Lamex could be held liable as a principal under Law 75.[13] Indeed, ALC conducted minimal discovery in the barely one-month-long period between the commencement of the federal suit and the injunction hearing; prior to the hearing, ALC had not even deposed a single representative of Lamex or George's.

In arguing its initial Rule 52(c) motion, ALC framed its argument in terms of the four-pronged test for preliminary injunctions.[14] Additionally, when arguing that Lamex lacked a

---

[13] The first exhibit, a letter from George's to ALC's counsel demanding that ALC cease and desist from using George's protected marks in its marketing and denying any "exclusivity in favor of ALC," was presented for the purpose of justifying ALC's decision to stop paying Lamex. The second exhibit was comprised of copies of the checks consigned to the Superior Court.

[14] Rule 52(c) allows for a judgment on partial findings "[i]f a party has been fully heard on an issue during a nonjury trial." Fed. R. Civ. P. 52(c). Although Lamex is under the impression that Rule 52(c) motions are only available in bench trials, appellant points out, and the record confirms, that its Rule 52(c) motions were directed toward Lamex's plea for injunctive relief, not toward the Law 75 issues. Trial courts in this circuit routinely entertain Rule 52(c) motions in preliminary injunction hearings, and not just bench trials. <u>See, e.g.</u>, <u>Freightliner, L.L.C.</u> v. <u>P.R. Truck Sales, Inc.</u>, 399 F. Supp. 2d 57, 73 (D.P.R. 2005).

probability of succeeding on the merits, ALC specifically pointed out that "there is a hearing on the state case that is scheduled for February 7." Finally, in renewing its motion at the end of the hearing, ALC argued that "injunction is a remedy for a person to claim a right when there is no other alternative," and that this equitable remedy was not necessary here because the parties would soon be trying their Law 75 case in state court. From these statements, it is evident that ALC understood that the Law 75 issue was not being litigated fully during the injunction hearing but instead would be resolved at a later point, either before a jury in federal court or as part of its multi-million-dollar state lawsuit.

3. Summary

Neither the status of the jury trial right nor the protections afforded it by the courts or the Federal Rules is diminished when a district court employs the consolidation mechanism provided by Rule 65(a)(2). In fact, the rule explicitly requires that even when consolidation is ordered, "the court must preserve any party's right to a jury trial," Fed. R. Civ. P. 65(a)(2), and appellate courts have held that a party's agreement to a properly noticed "'consolidation of trial on the merits with a hearing for a preliminary injunction by itself in no way amounts to a waiver of the right to jury trial.'" New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 120 (2d Cir. 2006) (quoting Heyman v. Kline, 456 F.2d 123, 130 (2d Cir. 1972)); see

-23-

also <u>Bowles</u> v. <u>Bennett</u>, 629 F.2d 1092, 1095 (5th Cir. 1980) (noting that "[e]ven assuming that plaintiffs' counsel had agreed to consolidate . . . , that, alone, would not be an express waiver of the right to jury trial"). Where, as here, the district court fails to provide indisputably clear notice of its intent to consolidate, with the effect that a party does not understand itself to be participating in a trial on the merits and conducts itself accordingly, we cannot infer a waiver of the jury trial right. See <u>Royal Am. Managers</u>, 885 F.2d at 1018 ("Of course, a party should not be held, by reason of its participation in the nonjury proceedings, to have waived the jury trial right unless the party was 'on notice that the trial court was planning to adjudicate the dispositive issues of fact.'" (quoting <u>1966 Beechcraft Aircraft Model King Air A90</u>, 777 F.2d at 951)); <u>see also White</u> v. <u>McGinnis</u>, 903 F.2d 699, 703 (9th Cir. 1990). This is not a situation in which a losing party is "attempting a second bite at the apple." <u>Coxcom</u>, 536 F.3d at 111. Rather, ALC has not even had its first full bite.

We conclude that the district court erred in failing to provide indisputably clear notice of its intent to consolidate under Rule 65(a)(2) and, in so doing, abrogated ALC's right to a jury trial. Accordingly, we vacate the court's judgment with respect to the claims for declaratory judgment and to pierce the corporate veil and remand for further proceedings consistent with

this opinion.  Because ALC conceded the amount and existence of the debt owed to Lamex, we affirm the district court's monetary judgment in favor of Lamex.[15]

**B. Discovery-Related Sanctions**

Appellant challenges the district court's order imposing sanctions upon it for its failure to comply with discovery obligations.  District courts have "first-line authority for case-management decisions."  Torres v. Puerto Rico, 485 F.3d 5, 10 (1st Cir. 2007).  We therefore "step softly" when reviewing the imposition of sanctions, intervening only when there has been an abuse of discretion.  Id. (quoting United States v. One 1987 BMW 325, 985 F.2d 655, 657 (1st Cir. 1993)).

Pursuant to its authority under Federal Rules of Civil Procedure 16(f) and 37(b)(2), the court ordered ALC to pay the

---

[15] ALC also presses an abstention argument pursuant to the doctrine enunciated in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).  Although this court may raise the issue of Colorado River abstention sua sponte, Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 27 n.4 (1st Cir. 2010), "abstention is a waivable defense," Guillemard-Ginorio v. Contreras-Gómez, 585 F.3d 508, 517 (1st Cir. 2009).  ALC failed to raise the issue below, and we deem it waived.  Even if the issue had been preserved, however, abstention is not warranted here.  The circumstances permitting abstention on grounds of "wise judicial administration," Colo. River, 424 U.S. at 818, "are quite 'limited' and indeed 'exceptional.'"  Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 71 (1st Cir. 2005) (quoting Colo. River, 424 U.S. at 819); see also Currie v. Group Ins. Comm'n, 290 F.3d 1, 10 (1st Cir. 2002) (reserving Colorado River abstention for only the most "extraordinary circumstances").  The circumstances here would not remotely justify the federal court taking the extraordinary step of divesting itself of jurisdiction.

-25-

costs and attorney's fees Lamex incurred in the deposition of Audeliz Lebrón. It did so upon finding that Lebrón was non-responsive to the questions of Lamex's counsel during his deposition, and that through his vexatious conduct he "placed obstacles to the taking of the deposition in violation of the Rules [of Civil Procedure]." Here, as below, appellant attempts to justify Lebrón's behavior by asserting that he only refused to answer questions that he thought were beyond the scope of the deposition.[16] This representation is belied by the deposition transcript, which shows that Lebrón was obstructionist and hostile to Lamex's counsel's most benign questions.[17] Additionally, as the

---

[16] ALC also ventures a fairness argument, contending that Lamex too did not comply with its discovery obligations. It made this argument in a motion for sanctions against Lamex, and the district court, within its discretion, rejected the motion, concluding that "[p]laintiff's behavior did not warrant sanction."

[17] This is a typical exchange between Lamex's counsel and Lebrón:

Counsel: [W]hat was your position in [the first] supermarket [you worked for]?

Lebrón: Groceries.

Counsel: Okay . . . . Could you explain to me what were your duties and responsibilities . . . ?

. . . .

Lebrón: I repeat groceries, groceries.

Counsel: Okay. But my question goes a little further than that, Mr. Lebrón . . . . What exactly did you do as a grocery [at the supermarket]?

district court pointed out in its sanctions order, it did not order limited discovery and thus Lebrón and ALC had no grounds to believe that the deposition was limited in scope. Finally, even if ALC or Lebrón had justifiable concerns regarding the scope of the deposition, the Federal Rules provide a way for them to register those objections without holding up the deposition. See Fed. R. Civ. P. 30(c)(2). Given Lebrón's behavior, the district court was well within its discretion in imposing sanctions.

## III.

For the reasons set forth, we **affirm** the court's imposition of sanctions against ALC; **affirm** the court's monetary judgment in favor of Lamex; **vacate** the court's judgment with respect to Lamex's claims for a declaratory judgment and to pierce ALC's corporate veil; and **remand** for proceedings consistent with this opinion. Each party shall bear its own costs on appeal.

**So ordered.**

---

Lebrón: Well, if you don't know what groceries is, check and see what groceries is.